## TICONIC NAT. BANK et al. v. SPRAGUE et al.

### No. 3192.

Circuit Court of Appeals, First Circuit.

June 1, 1937.

For former opinion, see 87 F.(2d) 365.

F. Harold Dubord, of Waterville, Maine, for appellants.

Harvey D. Eaton, of Waterville, Maine, for appellees.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

This is an appeal from a decree of the federal District Court for Maine sustaining the plaintiffs' bill in equity and ordering the defendant Pitcher, the receiver of the Peoples National Bank, to pay to the plaintiffs the sum of $3649.65, with interest from July 30, 1935, the date of the bill of complaint, with costs.

The bill was brought by Lottie F. Sprague and her daughter, Margaret Davis Sprague, against the Ticonic National Bank, the Peoples National Bank, and Arthur D. Pitcher, receiver of both banks, to establish the validity of a trust agreement dated March 28, 1931, entered into between the plaintiff Lottie F. Sprague and the Ticonic National Bank, as trustee, and to assert a lien upon certain kingdom of Denmark bonds aggregating $20,000, held as security for the performance of the trust agreement.

From an early day there had existed in Waterville, Me., two national banks, one known as the Ticonic National Bank, and the other as the Peoples National Bank. In December, 1926, the Federal Reserve Board authorized the Ticonic Bank to act in a fiduciary or trust capacity as provided in title 12, U.S.C. § 248(k), 12 U.S.C.A. § 248 (k), and on that day the directors of the Ticonic Bank established a trust department and adopted by-laws for its management, by which they established adequate provisions for the protection of trust funds, including the provision that trust funds held by the bank and "awaiting investment or distribution" if deposited in the commercial department of the bank to the credit of the trust department, the bank "should first deliver to the trust department, as collateral security, United States bonds or other marketable securities owned by the bank, * * * at least equal in market value to the amount of the funds deposited," and also as required by section 248(k).

On March 28, 1931, the plaintiff Lottie F. Sprague delivered to the trust department of the Ticonic Bank $5,022.18 to establish a trust fund for the benefit of her daughter Margaret under a written agreement setting forth the terms of the trust. By its terms, the trustee was authorized to invest the money in such "bonds or securities" as in its discretion it might determine, and to deposit in its savings department out of said sum at least $1,000. And the trustee agreed to collect the income, interest, and dividends, and on the first banking day of each month, beginning April 1, 1931, pay to the daughter Margaret the sum of $50 from the fund and accumulations until the sum and accumulations were exhausted, etc. The Ticonic Bank accepted the trust and deposited the money in its commercial checking department to the credit of its trust department, with other trust funds awaiting investment or distribution, and secured the total amount of such funds by setting aside in the trust department bonds equal to or exceeding in value the amount of such total deposits, as provided by the by-laws of the bank and the Federal Reserve Act. Included among the bonds thus segregated was a certain lot of $20,000 kingdom of Denmark 6s; 1942.

August 3, 1931, the Ticonic Bank ceased to do business as an active banking concern, sold substantially all of its assets to the Peoples National Bank, and went into voluntary liquidation. In the agreement of sale, the Peoples Bank assumed and agreed to pay the liabilities of the Ticonic Bank to its depositors, but it does not appear that the Peoples Bank succeeded the Ticonic Bank as trustee or expressly undertook the administration of the latter's trusts. The evi-

dence showed that the Ticonic Bank, through its officers, continued to exercise supervision over the trust accounts, including the Sprague account. But that, early in 1931, prior to the acceptance of the Sprague trust by the Ticonic Bank, Mr. Charles W. Vigue, who was president and remained president of the Peoples Bank, had become president and director of the Ticonic Bank and an officer of its trust department; that he assumed active management and control of the latter bank's affairs; that several other gentlemen were and remained directors of both banks; and that both banks were practically controlled by one stock ownership.

After the sale of the assets of the Ticonic Bank to the Peoples Bank, the deposits in the commercial account of the Ticonic Bank, to the credit of its trust department, were carried on the books of the Ticonic Bank in the same way as before, but the funds ($10,127.66) were deposited in the commercial account of the Peoples Bank, and the officers of the Ticonic, in handling this account of the uninvested trust funds, continued to make deposits and draw checks as before. Even down to the close of the banks in 1933, the president and trust officers of the Ticonic Bank drew checks on that bank although it had gone out of business; the checks, however, were presented to and paid by the Peoples Bank in the old banking rooms of the Ticonic which the Peoples Bank had taken over. The Peoples National Bank and the Peoples-Ticonic National Bank are the same thing—a mere change of name.

The Sprague account, which was never invested in any way by the Ticonic Bank, as trustee, was finally drawn down to $3,-649.65, which is the amount of the trust fund that should be in the hands of the trustee. None of the uninvested trust funds, either of the Sprague trust or the other trust was on deposit in the Peoples Bank (then called Peoples-Ticonic) to the credit of the trust department of the Ticonic Bank at the time the banks were taken over by the receiver.

The kingdom of Denmark bonds, which had been segregated by the Ticonic Bank to secure its uninvested trust funds, were included in the sale of assets by the Ticonic Bank to the Peoples Bank, and delivered to and taken over by it. The bonds were treated by the Peoples Bank as its own property. It set them apart to secure its own trust funds as distinguished from the trust funds of the Ticonic Bank, and they were subsequently sold by the receiver for $20,722.66, which fund is now held by him.

It is also found that, as both of the banks had the same active president, who also participated as trust officer in the handling of the trust funds of the Ticonic Bank, both before and after the quasi-consolidation, the officers of the Peoples or Peoples-Ticonic Bank had full knowledge of the situation concerning the trust funds of the Ticonic and that its uninvested trust funds, at the time and before they were turned over to the Peoples, were secured by the kingdom of Denmark bonds; that, although the Ticonic Bank, as trustee, was authorized to reserve $1,000 from the trust fund and to deposit that amount in its savings department, no such deposit was made; that none of the Sprague money was ever invested, either by deposit under the safeguards of the savings department, or otherwise, but always remained among the uninvested trust funds; that the banks were closed March 4, 1933, and Mr. Pitcher was later appointed receiver of both banks.

The evidence also tends to show that the amount derived from the sale of the kingdom of Denmark bonds by the receiver is sufficient to pay all the trust moneys deposited in the trust department of the Ticonic Bank at the time the banks were taken over by the receiver, together with interest from that date.

The above statement embodies the facts as found by the District Court and approved or found by this court.

The plaintiffs are not here seeking to establish a claim as general creditors against the assets of either of the two banks that came into the hands of the receiver in trust for general creditors. What they are seeking to do is to establish a trust agreement with the Ticonic Bank under which a fund was deposited by the plaintiffs in the trust department of that bank, which fund it never invested and no part of which was deposited in its savings department, but all put into its commercial account and used in its general banking business; and assert a lien upon the bonds pledged as security therefor.

■ Under the terms of its by-laws and section 248(k), if the Ticonic Bank deposited the trust fund in its commercial account for use in the conduct of its general business, it was required to "first set aside in [its] trust department United States bonds

644

or other securities approved by the Board of Governors of the Federal Reserve System," and, in the event of the bank's failure, the owners of such fund by section 248(k) were given "a lien on the bonds or other securities so set apart in addition to their claim against the estate of the bank." And, inasmuch as the plaintiffs' trust deposits were never invested by the Ticonic Bank and no part of them was deposited in the savings department, but were used by it in the conduct of its business, the plaintiffs acquired a lien on the bonds segregated to secure the deposit, in addition to any claim they might have as general creditors against the estate of the bank held by the receiver.

The plaintiffs did not lose their lien on the bonds by virtue of the attempted sale of them by the Ticonic to the Peoples Bank, for the Peoples Bank knew that the bonds had been segregated to secure the payment of uninvested trust deposits and took them charged with a trust or lien to secure those deposits. The trust deposits were never invested by the Ticonic Bank within the terms of the trust agreement. Their later deposit on or about August 3, 1931, in the commercial account of the Peoples Bank, was not such an investment, and the lien on the segregated securities was never in any way discharged. The receiver acquired no greater rights in the kingdom of Denmark bonds than the Peoples Bank had by its colorable purchase of them from the Ticonic. And the bonds, having been segregated in the latter's trust department to meet the requirements of section 248(k) and its own by-laws, the Peoples Bank and the receiver took them charged with the trust as above stated. Burrowes v. Nimocks (C.C.A.) 35 F.(2d) 152, at page 159; Schumacher v. Eastern Bank & Trust Co. (C.C.A.) 52 F.(2d) 925, at pages 928, 929.

The receiver sold the bonds for $20,-722.66, which sum he now holds apart from the general assets of the banks. That sum is nearly twice the amount of the trust deposits of all the depositors, including the plaintiffs', and undoubtedly more than sufficient to pay the claims of all the depositors with interest. Consequently we see no reason why the plaintiffs should not recover the amount due at the time the bank was taken over by the receiver, with interest and costs as allowed by the District Court.

In saying this we are aware that, if the plaintiffs were seeking to establish a claim against the general funds of an insolvent national bank, they could not be allowed interest after the bank was taken over by the receiver, as the requirement of a ratable distribution precludes, in such case, the recovery of interest. But this is not such a case. The funds out of which the plaintiffs and others similarly situated claim payment are trust funds set apart from the general assets of the banks and in which the general creditors have no rights until after the secured claims are paid.

Our prior order in this case of January 15, 1937, is vacated and the order is:

The decree of the District Court is affirmed, with costs.