SPRAGUE *v.* TICONIC NATIONAL BANK ET AL.

No. 543.   Argued March 28, 1939.—Decided April 24, 1939.

*Mr. Harvey D. Eaton* for petitioner.

*Mr. George P. Barse,* with whom *Messrs. F. Harold Dubord, James Louis Robertson,* and *Trevor V. Roberts* were on the brief, for respondents.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

The case is here on *certiorari* to the Circuit Court of Appeals for the First Circuit which affirmed, 99 F. 2d 583, a decree of the District Court for the District of Maine, 23 F. Supp. 59, denying a petition for the allowance of counsel fees and expenses over and above the regular taxable costs. *Certiorari* was granted, 306 U. S. 623, because an important question of judicial administration pertaining to the exercise of federal equity jurisdiction was raised.

This case is another phase of a litigation that has been here before, *Ticonic Bank* v. *Sprague,* 303 U. S. 406, the circumstances of which must be summarized to lay bare the problem now before us. On March 28, 1931, Lottie F. Sprague, the petitioner here, delivered $5,022.18 to the Ticonic National Bank of Waterville, Maine, in trust in which she and others had beneficial interests. Under the trust agreement part of the amount was to be deposited by the Bank in its savings department. The rest of the funds was deposited by the Bank in its commercial checking department, as were other trust funds awaiting investment or distribution, secured by an appropriate amount of bonds set aside in its trust department as required by § 11 (k) of the amended Federal Reserve Act, 38 Stat. 262, as amended, 49 Stat. 722. On August 3,

1931, the People's National Bank took over all the assets, including these earmarked bonds, and assumed the indebtedness of the Ticonic Bank. On March 4, 1933, the People's Bank closed, and both banks went into the hands of a receiver. Thereafter, on July 29, 1935, the petitioner and her beneficiary filed a bill in the District Court against the banks and their receiver to impress upon the proceeds of the bonds a lien for their trust deposit. The District Court sustained the claim and entered a decree for the discharge of the lien with interest from the date of the filing of the bill and payment to the plaintiffs of "their taxable costs," 14 F. Supp. 900. On appeal, the Circuit Court of Appeals at first disallowed interest, 87 F. 2d 365, but on rehearing affirmed the decree of the District Court "with costs," 90 F. 2d 641. This Court then granted certiorari "limited to the question as to the allowance of interest," 302 U. S. 675. Before its disposition, *Ticonic Bank* v. *Sprague, supra,* the present proceedings were begun.

Petitioner alleged that, by vindicating her claim to a lien on the proceeds of the earmarked bonds to the amount of her trust funds, she had established as a matter of law the right to recovery in relation to fourteen trusts in situations like her own; that she had prosecuted the litigation solely at her own expense; that although the total assets of the bank were not sufficient to satisfy the unsecured creditors, the proceeds of the bonds were more than sufficient to discharge all trust obligations; and she therefore prayed the court for reasonable counsel fees and litigation expenses to be paid out of the proceeds of the bonds.

The District Court held that it "had no authority to grant the petition" on the ground that, after the appeal from its decree in 14 F. Supp. 900, it "had no further function to perform other than to carry out the mandate of the Supreme Court when received. The mandate from

the Supreme Court simply had the effect of directing this court to carry out the mandate of the Circuit Court of Appeals which in turn, simply, in effect, required this court to execute its original final decree by issuing its execution for a certain sum of money with costs of both courts." The Circuit Court of Appeals affirmed "for the reasons stated" by the District Court, and "for the further reason that the term of court at which the decree was entered, when the petition to amend was filed, had long since passed . . ." Obviously, both courts disposed of the petition not as a considered disallowance of attorney's fees and litigation expenses in the circumstances of the particular suit but because they deemed award of such costs beyond the power of the District Court.

Whether action by the District Court on the merits of the petition was foreclosed by this Court's mandate in *Ticonic Bank* v. *Sprague, supra,* and was further limited by restrictions which terms of court may impose, are questions subsidiary to the power of federal courts in equity suits to allow counsel fees and other expenses entailed by the litigation not included in the ordinary taxable costs recognized by statute.

Allowance of such costs in appropriate situations is part of the historic equity jurisdiction of the federal courts. The suits "in equity" of which these courts were given "cognizance" ever since the First Judiciary Act, constituted that body of remedies, procedures and practices which theretofore had been evolved in the English Court of Chancery,[1] subject, of course, to modifications

---

[1] See *Robinson* v. *Campbell*, 3 Wheat. 212, 222; *Boyle* v. *Zacharie*, 6 Pet. 648, 658; *Pennsylvania* v. *Wheeling Bridge Co.*, 13 How. 518, 563; *Payne* v. *Hook*, 7 Wall. 425, 430; Rule XXXIII, Rules of Practice for the Courts of Equity of the United States (1822) 7 Wheat v, xiii; Rule XC, Rules of Practice for the Courts of Equity of the United States (1842) 1 How. xli, lxix; 1 STORY, EQUITY JURISPRUDENCE (14th ed.) §§ 57, 58; 1 STREET, FEDERAL EQUITY PRACTICE, § 97.

by Congress, *e. g., Michaelson* v. *United States,* 266 U. S. 42. The sources bearing on eighteenth-century English practice—reports and manuals—uniformly support the power not only to give a fixed allowance for the various steps in a suit, what are known as costs "between party and party," but also as much of. the entire expenses of the litigation of one of the parties as fair justice to the other party will permit, technically known as costs "as between solicitor and client." [2] To be sure,

---

[2] See *Lomax* v. *Hidé,* 2 Vern. 185; *Ramsden* v. *Langley,* 2 Vern. 536; *Attorney General* v. *Carte,* 1 Dick. 113; *Attorney General* v. *Haberdashers' Co. and Tonna,* 4 Brown C. C. 179; *Ex parte Thorp,* 1 Ves. Jun. 394; *Moggridge* v. *Thackwell,* 1 Ves. Jun. 464; *Dungey* v. *Angove,* 2 Ves. Jun. 304. See 2 ADAIR, LAW OF COSTS IN COURTS OF EQUITY, 81, 87, 179; 2 BARBOUR, CHANCERY PRACTICE (2d ed.) 889–894; BEAMES, COSTS IN EQUITY (2d ed.) 144–146; 3 DANIELL's, CHANCERY PLEADING AND PRACTICE (2d ed.) 1434–35; 2 SMITH, CHANCERY PRACTICE (2d ed.) 697–700. One must, of course, be not unmindful of the inadequacy of eighteenth-century chancery reports, see 2 YORK, LIFE OF LORD CHANCELLOR HARDWICKE 429, particularly as to matters of costs. See BEAMES, COSTS IN EQUITY (Advertisement to Second Edition). But the current of authority is uniform and unequivocal.

The power of the federal courts to give costs was recognized by implication in the First Judiciary Act. Act of September 24, 1789, Ch. 20, § 20, 1 Stat. 83. The statutory-system prior to 1853 required "party and party" costs to be taxed on the basis of the fees allowed by state practice, but the Act of Feb. 26, 1853, Ch. 80, 10 Stat. 161, set a uniform scale of fees for "party and party" costs in the federal courts. See Costs in Civil Cases, 30 Fed. Cas. 18, 284; STREET, FEDERAL EQUITY PRACTICE §§ 1984–1988. As to costs "as between solicitor and client," the English practice was followed by the Supreme Court and it was held that the allowance of such costs was within the authority of the federal courts. *Trustees* v. *Greenough,* 105 U. S. 527; *Dodge* v. *Tulleys,* 144 U. S. 451; *Meddaugh* v. *Wilson,* 151 U. S. 333; compare *Central R. Co.* v *Pettus,* 113 U. S. 116; see 4 CYCLOPEDIA OF FEDERAL PROCEDURE § 1086; 2 FOSTER, FEDERAL PRACTICE (6th ed.) § 422; 2 STREET, FEDERAL EQUITY PRACTICE §§ 2033–2048. Compare the practice in admiralty, shown in *The Apollon,* 9 Wheat. 362; *Canter* v. *Insurance Companies,* 3 Pet. 307. The pro-

the usual case is one where through the complainant's efforts a fund is recovered in which others share. Sometimes the complainant avowedly sues for the common interest [3] while in others his litigation results in a fund for a group though he did not profess to be their representative.[4] The present case presents a variant of the latter situation. In her main suit the petitioner neither avowed herself to be the representative of a class nor did she automatically establish a fund in which others could participate. But in view of the consequences of *stare decisis*, the petitioner by establishing her claim necessarily established the claims of fourteen other trusts pertaining to the same bonds.

That the party in a situation like the present neither purported to sue for a class nor formally established by litigation a fund available to the class, does not seem to be a differentiating factor so far as it affects the source of the recognized power of equity to grant reimbursements of the kind for which the petitioner in this case appealed to the chancellor's discretion. Plainly the foundation for the historic practice of granting reimbursement for the costs of litigation other than the conventional taxable costs is part of the original authority of the chancellor to do equity in a particular situation.[5]

visions of the fee bill of 1853 that certain specified fees and no others shall be taxed to attorneys in the courts of the United States applies only to "party and party" costs. *Trustees* v. *Greenough*, 105 U. S. 527.

[3] *E. g.*, *Tootal* v. *Spicer*, 4 Sim. 510; *Hood* v. *Wilson*, 2 Russ. & M. 687; *Stanton* v. *Hatfield*, 1 Keen 358; *Sutton* v. *Doggett*, 3 Beav. 9; *Goldsmith* v. *Russell*, 5 De. G. M. & G. 547; *Henderson* v. *Dodds*, L. R. 2 Eq. 532; *Ferguson* v. *Gibson*, L. R. 14 Eq. 379; *Jervis* v. *Wolferstan*, L. R. 18 Eq. 18.

[4] *E. g.*, *Thomas* v. *Jones*, 1 Dr. & Sm. 134; compare *In re Richardson*, 14 Ch. Div. 611.

[5] For examples of the discretionary nature of the authority of equity to tax costs, see 3 DANIELL's, CHANCERY PLEADING AND PRAC-

Whether one professes to sue representatively or formally makes a fund available for others may, of course, be a relevant circumstance in making the fund liable for his costs in producing it. . But when such a fund is for all . practical purposes created for the benefit of others, the formalities of the litigation—the absence of an avowed class suit or the creation of a fund, as it were, through *stare decisis* rather than through a decree—hardly touch the power of equity in doing justice as between a party and the beneficiaries of his litigation. As in much else that pertains to equitable jurisdiction, individualization in the exercise of a discretionary power will alone retain equity as a living system and save it from sterility. In the actual exercise of the power to award costs "as between solicitor and client" all sorts of practical distinctions have been taken in distributing the costs of the burden of the litigation.[6] And so, the circumstances under which the petitioner enforced the fiduciary obligation of the Ticonic Bank—the relation of its vindication to beneficiaries similarly situated but not actually before the court, as well as the interest of the common creditors where the funds of the bank are not sufficient to pay them in full, and doubtless other considerations—must enter into the ultimate judgment of the District Court as to the fairness of making an award, or the extent of such award, "as between solicitor and client" in this case. In any event such allowances are appropriate only in exceptional cases and for dominating reasons of justice. But here we are concerned solely with the power to entertain such a petition.

Without considering the historic authority of a court of equity in such matters, the District Court deemed itself

---

.TICE (2d ed.) 1381–1410; 2 STREET, FEDERAL EQUITY PRACTICE §§ 1994–2007.

[6] See 3 DANIELL'S, CHANCERY PLEADING AND PRACTICE (2d ed.) 1434–1440; 2 STREET, FEDERAL EQUITY PRACTICE §§ 2033–2048.

powerless because foreclosed by the mandate in *Ticonic Bank* v. *Sprague, supra.* The general proposition which moved that Court—that it was bound to carry the mandate of the upper court into execution and could not consider the questions which the mandate laid at rest—is indisputable. Compare *Kansas City Southern Ry. Co.* v. *Guardian Trust Co.,* 281 U. S. 1.[7] But that leaves us still to consider whether the immediate issue now in controversy was disposed of in the main litigation and therefore foreclosed by the mandate. While a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues. See *In re Sanford Fork & Tool Co.,* 160 U. S. 247; *Ex parte Century Indemnity Co.,* 305 U. S. 354. Certainly the claim for "as between solicitor and client" costs was not directly in issue in the original proceedings by Sprague. It was neither before the Circuit Court of Appeals nor before this Court. Its disposition, therefore, by the mandate of either Court could be implied only if a claim for such costs was necessarily implied in the claim in the original suit, and its failure to ask for such costs an implied waiver. These implications are repelled by the basis on which such costs are granted. They are not of a routine character like ordinary taxable costs; they are contingent upon the exigencies of equitable litigation, the final disposition of which in its entire process including appeal places such a claim in much better perspective than it would have at an earlier stage. Such are the considerations which

---

[7] In *Kansas City Southern Ry. Co.* v. *Guardian Trust Co., supra,* costs "as between solicitor and client" had been asked in suggestions on appeal from the original disposition of the cause. The Circuit Court of Appeals, while affirming on the merits, passed on these suggestions in a way interpreted by this Court to allow only "party and party" costs. No appeal had been taken on this point. A subsequent application in the District Court for "solicitor and client" costs was therefore held barred.

underlay the decision in *Trustees* v. *Greenough,* 105 U. S. 527, in holding that an order allowing costs "as between solicitor and client" was a final judgment for purposes of appeal because "the inquiry was a collateral one, having a distinct and independent character." [8]  We, therefore, hold that the issue in the instant case is sufficiently different from that presented by the ordinary questions regarding taxable costs that it was impliedly covered neither by the original decree nor by the mandates, and that neither constituted a bar to the disposal of the petition below on its merits.

Finally, we must notice the separate ground taken by the Circuit Court of Appeals on the basis of what it deemed the requirements of terms of court.  The new Rules of Civil Procedure have rendered anachronistic the technical niceties pertaining to terms of court as to both law and equity,[9] but the ruling of the District Court here

---

[8] In *Trustees* v. *Greenough,* suit was brought by a holder of certain bonds against the trustees of the state improvement fund alleging mismanagement and waste of the fund which was to secure the bonds and asking that his claim be allowed, that the fund be charged with the payment thereof, and that an accounting be had.  This relief was granted, much property was reclaimed to the fund and agents were appointed for the sale of the property of the fund for the purposes of liquidation.  During the liquidation, the holder of the bonds who had initiated the proceedings filed his petition for an allowance from the fund of his costs as between solicitor and client.  Such costs were allowed without any suggestion that the application for them was not timely.

[9] Prior to the adoption of the new Rules of Civil Procedure, a final decree in a suit in equity could be revised only during the term of court of its entry.  *Cameron* v. *M'Roberts,* 3 Wheat. 591; *Buckeye Co.* v. *Hocking Valley Co.,* 269 U. S. 42.  The same limitation existed on the power of a district court to grant a rehearing of an appealable decree.  Equity Rule 88.  These time limitations are no longer applicable.  Rules 59 and 60 of the Rules of Civil Procedure set forth the time in which these actions may be taken, but under those sections the passage of the term of court is not material.  Indeed,

in question was made prior to the operation of the new Rules. Since we view the petition for reimbursement as an independent proceeding supplemental to the original proceeding and not a request for a modification of the original decree, the suggestion of the Circuit Court of Appeals—that it came after the end of the term at which the main decree was entered and therefore too late—falls.

The decision of the Circuit Court of Appeals must be reversed so that the District Court may entertain the petition for reimbursement in the light of the appropriate equitable considerations.

*Reversed.*

MR. JUSTICE MCREYNOLDS and MR. JUSTICE BUTLER concur in the result.

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.

---

Rule 6 (c) provides: "The period of time provided for the doing of any act or the taking of any proceeding is not affected or limited by the expiration of a term of court. The expiration of a term of court in no way affects the power of a district court to do any act or take any proceeding in any civil action which has been pending before it." It was stated in the Notes to the Rules of Civil Procedure, prepared by the Advisory Committee, March 1938, that this section "eliminates the difficulties caused by the expiration of terms of court."