**SPRAGUE et al. v. TICONIC NAT. BANK et al.**

District Court, D. Maine, S. D.

June 29, 1939.

Harvey D. Eaton, of Waterville, Me., for petitioners.

F. Harold Dubord, of Waterville, Me., for defendants.

PETERS, District Judge.

The particular phase of this case now before the court is the petition of Lottie F. Sprague for allowance of counsel fees and expenses incurred by her in prosecuting the litigation which resulted in the establishment of a lien upon the proceeds of $20,000 of Kingdom of Denmark bonds in the hands of the receiver of the Peoples-Ticonic National Bank, which lien inured to the benefit of herself and some fourteen other beneficiaries of similar trusts.

It is unnecessary to recite in detail the facts which were the basis of the litigation referred to. They were originally stated by this court in Sprague et al. v. Ticonic National Bank et al., D.C., 14 F.Supp. 900, then by the Circuit Court of Appeals in Ticonic National Bank v. Sprague et al., 1 Cir., 90 F.2d 641; afterward by the Supreme Court in Ticonic Nat. Bank v. Sprague et al., 303 U.S. 406, 58 S.Ct. 612, 82 L.Ed. 926; and quite recently (April 24, 1939) in Lottie F. Sprague, petitioner, v. Ticonic Nat. Bank et al., 59 S.Ct. 777, 83 L.Ed. ——.

The last opinion of the Supreme Court corrected the view of this court, concurred in by the Circuit Court of Appeals, that after the Sprague case left this court on appeal this court had no power to act on the petition (filed February 19, 1938) for allowance of counsel fees and expenses over and above the regular taxable costs (see Sprague et al. v. Picher, D.C., 23 F. Supp. 59; Id., 1 Cir., 99 F.2d 583, and the opinion of the Supreme Court of April 24, 1939, 59 S.Ct. 777, 781, 83 L.Ed. ——).

The Supreme Court has said that: "The issue in the instant case is sufficiently different from that presented by the ordinary questions regarding taxable costs that it was impliedly covered neither by the original decree nor by the mandates, and that neither constituted a bar to the disposal of the petition below on its merits", and held that: "The decision of the Circuit Court of Appeals must be reversed so that the District Court may entertain the petition for reimbursement in the light of the appropriate equitable considerations." Consequently, this court now entertains the petition and will endeavor to

apply the appropriate equitable considerations.

Language in the opinion of the Supreme Court to the effect that allowances of costs "as between solicitor and client" are appropriate "only in exceptional cases and for dominating reasons of justice", has stimulated counsel for the bank and its receiver in their contention that this is not such a case. It appears, however, that it was necessary for Mrs. Sprague to bring her original bill in equity in this court to establish a lien on the bonds in question, which had been sold by one bank, with most of its other assets, to another bank, which agreed to pay the depositors of the first bank, but did not take over the trust under which the bonds were held,—the trust being continued to be administered by the first bank through its officers.

The receiver of both banks (being the same person), under the direction of the Comptroller, resisted the claim of Mrs. Sprague, which was identical with that of fourteen other beneficiaries of similar trusts, secured by the same bonds, and caused an appeal to the Circuit Court of Appeals, resulting in a partial affirmance of the original decree of this court (1 Cir., 87 F.2d 365). On rehearing, the Circuit Court of Appeals vacated its first decree and wholly affirmed the decree of this court. The Supreme Court granted certiorari on one of the questions involved,—that of interest,—and decided, March 7, 1938 (303 U.S. 406, 58 S.Ct. 612, 82 L.Ed. 926), that the first decree of this court should stand.

The petitioner was put to unusual expense and suffered several years' delay in securing her rights through litigation in three courts involving some questions of new impression. She was not joined in her litigation by any of the other parties in interest, nor did she purport to bring her suit in behalf of herself and others, but the others got the benefit of her efforts and outlay. As the Supreme Court said in its last opinion: "in view of the consequences of stare decisis, the petitioner by establishing her claim necessarily established the claims of fourteen other trusts pertaining to the same bonds."

The benefit to the petitioner was small compared with the aggregate benefit to the fourteen others.

It would seem that the case is exceptional and the reasons of justice sufficiently "dominating" to justify some allowance to the petitioner for expenses, if other considerations, necessarily involved, will permit.

The objection is made that no fund has been created by the litigation and that there is no fund in the control of this court from which an allowance of counsel fees can be made.

I read the opinion of the Supreme Court as declaring that in view of the consequences of stare decisis the result of the litigation is practically the equivalent of a situation where, through a complainant's efforts, a fund is recovered in which others share.

As to the point that the court has no control over the fund derived from the sale of the Denmark bonds held in trust by the receiver,—as has now been decided,—it is true, as suggested, that, by the provisions of Sec. 194, Title 12, U.S.Code, 12 U.S.C.A. § 194, the Comptroller in charge of the receivership of the bank is obliged to make a ratable distribution of proceeds of assets to creditors who have proved their claims or whose claims have been adjudicated in court. But neither the original claim of Mrs. Sprague nor this companion claim for an allowance of costs as between solicitor and client is a claim against the general assets. As the Circuit Court of Appeals said in Ticonic Bank et al. v. Sprague et al., 1 Cir., 90 F.2d 641, 644:

"The receiver sold the bonds for $20,-722.66, which sum he now holds apart from the general assets of the banks. That sum is nearly twice the amount of the trust deposits of all the depositors, including the plaintiffs', and undoubtedly more than sufficient to pay the claims of all the depositors with interest. Consequently we see no reason why the plaintiffs should not recover the amount due at the time the bank was taken over by the receiver, with interest and costs as allowed by the District Court.

"In saying this we are aware that, if the plaintiffs were seeking to establish a claim against the general funds of an insolvent national bank, they could not be allowed interest after the bank was taken over by the receiver, as the requirement of a ratable distribution precludes, in such case, the recovery of interest. But this is not such a case. The funds out of which the plaintiffs and others similarly situated claim payment are trust funds set apart

from the general assets of the banks and in which the general creditors have no rights until after the secured claims are paid."

The fund established by the efforts of the petitioner is sufficient in amount to cover all claims under the trust including the incidental expenses of establishing it, and it is only after all obligations accompanying the trust are met that the balance is available for statutory distribution among unsecured creditors.

I take it that the Supreme Court would hardly have sent this matter back for this court to "entertain the petition for reimbursement in the light of the appropriate equitable considerations," if statutory considerations could be thought to prevent any action whatever.

It appears from statements of counsel that 88% of their claims has already been paid to unsecured creditors and that something more may be paid.

Having in mind the opinion of the Supreme Court, I have considered "the circumstances under which the petitioner enforced the obligation of the Ticonic Bank —the relation of its vindication to beneficiaries similarly situated but not actually before the court, as well as the interest of the common creditors", who will probably lack about 10% of receiving their claims in full, as well as the importance to all parties interested of having some administrative questions settled, and conclude that it is fair to make an award of costs "as between solicitor and client."

There is no difficulty in determining the amount of the award. The petition filed February 19, 1938, which was the subject of consideration by the Supreme Court, asked for an award of $1,279.05, but this included taxable costs of $64.54 which have been paid leaving $1,214.51. This is the amount charged by counsel for services from October, 1934, to February, 1938, including all expenses involved in bringing and trying the original action in this court, an appeal and rehearing in the Circuit Court of Appeals and a hearing before the Supreme Court. While the amount finally collected by his clients was less than $5,000, the amount really involved in view of the claims of the other parties interested would be more than twice that sum and I consider that an allowance of $1,214.51 to be wholly reasonable and proper.

There is, however, another petition filed June 1, 1939, asking for an allowance of $1,877.30 for time and expenses involved in endeavoring to obtain the allowance of the amount asked for in the first petition. To be sure the astute and indomitable counsel for the petitioner carried the pursuit of his allowance to this court, to the Circuit Court of Appeals and to the Supreme Court, and now here again before finally successful, but nevertheless I am of the opinion that an allowance of fees and expenses incurred in obtaining an allowance is neither reasonable nor within the principle under which an allowance for counsel fees, as between solicitor and client, can be made under the exceptional circumstances above outlined, and consequently the second petition must be denied.

A decree may be entered allowing the first petition with costs, which costs, being taxable costs, are all the costs I think petitioner is entitled to, in addition to the award of costs as between solicitor and client.