**SPRAGUE v. TICONIC NAT. BANK et al.**

**TICONIC NAT. BANK et al. v. SPRAGUE.**

**Nos. 3533, 3534.**

Circuit Court of Appeals, First Circuit.

March 8, 1940.

Harvey D. Eaton, of Waterville, Me., for Sprague, executor.

F. Harold Dubord, of Waterville, Me., for Ticonic Nat. Bank et al.

Before MAGRUDER and MAHONEY, Circuit Judges, and SWEENEY, District Judge.

MAGRUDER, Circuit Judge.

This litigation, though not involving much money, has twice been all the way to the Supreme Court. We now have to consider an appeal and a cross-appeal from a decree of the District Court allowing in part and denying in part the plaintiff's petition for reimbursement of litigation expenses, including counsel fees, referred to as "costs as between solicitor and client." Throughout this opinion, "plaintiff" refers to Lottie F. Sprague, the original plaintiff, recently deceased, whose executor has been substituted in her stead.

On March 28, 1931, the plaintiff delivered $5,022.18 to the Ticonic National Bank of Waterville, Maine, in trust for investment and reinvestment and for the making of monthly payments to the plaintiff's daughter from the funds and accumulations until the same should be exhausted. The grantor reserved the right at any time to revoke the trust and resume possession of the funds. Under the trust agreement, part of the amount was to be deposited by the bank in its savings department. The rest of the funds was deposited by the bank in its commercial checking department, as were other trust funds awaiting investment or distribution, secured by an appropriate amount of bonds set apart in its trust department, as required by Section 11(k) of the Federal Reserve Act, as amended, 12 U.S.C. § 248(k), 12 U.S.C.A. § 248(k). On August 3, 1931, the People's National Bank took over all the assets, including these segregated bonds, and assumed all the indebtedness of the Ticonic National Bank. The bonds thus acquired were treated by the People's Bank as its own property; it set them apart to secure its own trust funds as distinguished from the trust funds of the Ticonic Bank. On March 4, 1933, the People's Bank closed and both banks went into the hands of a receiver.

In the first phase of the litigation the plaintiff succeeded in establishing that the People's Bank acquired the bonds with knowledge that they had been segregated by the Ticonic Bank for the security of uninvested trust funds, as required by law; hence that the proceeds of the bonds, in the hands of the receiver, were charged with a lien in favor of the plaintiff to satisfy principal and interest and ordinary taxable "costs as between party and party." Sprague v. Ticonic National Bank, D.C., 1936, 14 F.Supp. 900; Ticonic National Bank v. Sprague, 1937, 1 Cir., 87 F.2d 365; and upon rehearing, 1 Cir., 1937, 90 F.2d 641; Ticonic National Bank v. Sprague, 1938, 303 U.S. 406, 58 S.Ct. 612, 82 L.Ed. 926.

The plaintiff then petitioned the District Court for reimbursement of reasonable counsel fees and litigation expenses to be paid out of the proceeds of the earmarked bonds, which were more than sufficient to discharge all trust obligations to the plaintiff and others similarly situated. The District Court held that it had no authority to entertain the petition. Sprague v. Picher, D.C., 1938, 23 F.Supp. 59. In this, we affirmed the District Court. Sprague v. Ticonic National Bank, 1 Cir., 1938, 99 F.2d 583. Upon certiorari, the Supreme Court reversed our judgment of affirmance and ordered that the case be remanded to the District Court with directions to entertain the petition for reimbursement in the light of the appropriate equitable considerations. Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 780, 83 L.Ed. 1184.

In its opinion the Supreme Court pointed out that courts of equity from early times have had discretionary power to grant reimbursement for expenses of litigation in addition to the conventional taxable costs. This historic practice, the Court said, rests on no narrow foundation but is derived from "the original authority of the chancellor to do equity in a particular situation". The fact that the present case was not technically a class suit and that the litigation did not formally establish a fund available to the class, was considered not to be "a differentiating factor so far as it affects the source of the recognized power of equity to grant reimbursements" for costs as between solicitor and client. 307 U.S. at page 166, 59 S.Ct. at page 780, 83 L.Ed. 1184. Continuing, the Court said (307 U.S. at page 167, 59 S.Ct. at page 780, 83 L.Ed. 1184): "But when such a fund is for all practical purposes created for the benefit of others, the formalities of the litigation—the absence of an avowed class suit or the creation of a fund, as it were, through stare decisis rather than through a decree—hardly touch the power of equity

in doing justice as between a party and the beneficiaries of his litigation. As in much else that pertains to equitable jurisdiction, individualization in the exercise of a discretionary power will alone retain equity as a living system and save it from sterility. In the actual exercise of the power to award costs 'as between solicitor and client' all sorts of practical distinctions have been taken in distributing the costs of the burden of the litigation. And so, the circumstances under which the petitioner enforced the fiduciary obligation of the Ticonic Bank—the relation of its vindication to beneficiaries similarly situated but not actually before the court, as well as the interest of the common creditors where the funds of the bank are not sufficient to pay them in full, and doubtless other considerations—must enter into the ultimate judgment of the District Court as to the fairness of making an award, or the extent of such award, 'as between solicitor and client' in this case. In any event such allowances are appropriate only in exceptional cases and for dominating reasons of justice. But here we are concerned solely with the power to entertain such a petition."

When the case got back to the District Court for the third time, the plaintiff supplemented her original petition for reimbursement by an additional petition filed June 1, 1939, asking for reimbursement in the sum of $1,877.30 covering further costs and expenses, including counsel fees, incurred in the second phase of the litigation, above set forth, that is, the costs of establishing her right to reimbursement for counsel fees and expenses incurred in the primary litigation. The district judge granted the plaintiff's original petition for reimbursement, in the sum of $1,214.51, but denied her supplemental petition. From a decree to this effect both parties now appeal.

■ The bank objects to the granting of any reimbursement for counsel fees and expenses, under the particular circumstances of the case. It urges that the District Court misconceived the opinion of the Supreme Court as in effect a mandate to award counsel fees. We think it clear, from a reading of the opinion of the District Court, that it was laboring under no such misapprehension. See 28 F.Supp. 229, 230. After weighing the considerations the District Court concluded "that the case is exceptional and the reasons of justice sufficiently 'dominating' to justify some allowance to the petitioner for expenses, if other considerations, necessarily involved, will permit".

Further, the bank contends that the District Court was without authority to award costs as between solicitor and client because there was no fund under control of the court from which such award could be made; that no fund was recovered and brought into court for administration or distribution inasmuch as the collateral in question was already in the hands of the bank's receiver for administration for the benefit of depositors and creditors. This asserted limitation upon the power of the court of equity to award reimbursement of counsel fees and expenses seems to us squarely in conflict with the decision of the Supreme Court in 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184, above set forth.

If any reimbursement for litigation expenses may appropriately be made, the bank argues that this should not be done at the expense of the unsecured creditors of the bank; that these expenses should be prorated among the various trust estates which ultimately benefited from the litigation. In this connection the bank lays great stress upon a phrase in the Supreme Court's opinion about "the power of equity in doing justice as between a party and the beneficiaries of his litigation". There might have been occasion to prorate the litigation expenses among the persons benefited, had the earmarked funds upon which the lien was established been insufficient to discharge all trust obligations. Here, however, the expenses can be reimbursed to the plaintiff in full, without diminishing the amounts payable out of the fund to the other beneficiaries similarly situated. The petition for reimbursement of expenses asks that the same be paid out of the proceeds of the earmarked bonds. In sending the case back to the District Court with directions to consider the petition on its merits, the Supreme Court did not qualify the power of the District Court as now suggested by the bank. Upon the contrary, the Supreme Court evidently contemplated that the District Court in allowing reimbursement might diminish the funds which otherwise would become available for distribution among the unsecured creditors, for the Supreme Court mentioned as one of the appropriate equitable considerations "the interest of the common creditors

where the funds of the bank are not sufficient to pay them in full".

The District Court cannot be charged with an abuse of discretion in concluding that under the exceptional facts of the case there were dominating reasons of justice warranting an allowance to the petitioner for litigation expenses incurred in establishing the lien on the proceeds of the bonds. It is true that the allowance to the plaintiff of $1,214.51 diminished to that extent the funds available for unsecured creditors. But if it was equitable to make the plaintiff whole for her expenses in establishing the lien, the District Court was warranted in concluding that the trivial disadvantage to the unsecured creditors was not a significant countervailing consideration. The general creditors have already received nearly ninety per cent of their claims, and $1,214.51 distributed among them would mean very little to any of them.

■ There remains to be considered that portion of the District Court's decree denying the plaintiff's supplemental petition for reimbursement. As to this, the District Court said:

"There is, however, another petition filed June 1, 1939, asking for an allowance of $1,877.30 for time and expenses involved in endeavoring to obtain the allowance of the amount asked for in the first petition. To be sure the astute and indomitable counsel for the petitioner carried the pursuit of his allowance to this court, to the Circuit Court of Appeals and to the Supreme Court, and now here again before finally successful, but nevertheless I am of the opinion that an allowance of fees and expenses incurred in obtaining an allowance is neither reasonable nor within the principle under which an allowance for counsel fees, as between solicitor and client, can be made under the exceptional circumstances above outlined, and consequently the second petition must be denied."

Though recognizing a possible ambiguity, we read the foregoing passage as more probably indicating a denial based upon an assumed lack of power to entertain the supplemental petition rather than a discretionary denial after weighing the relevant equitable considerations. If, in truth, the District Court does lack this power, then the plaintiff won but a hollow victory in the second phase of the litigation, for the expenses she had to incur in establishing her right to an award of costs as between solicitor and client were greater than her costs in the primary litigation. Had the District Court entertained her original petition for reimbursement in the first instance, instead of putting her to the necessity of taking successive appeals in order to establish her right to costs, the plaintiff would have been made whole. In the present posture of the case the plaintiff is worse off than if she had accepted without challenge the erroneous decision of the District Court (23 F.Supp. 59) that it had no authority to make the allowance. Considering the broad base upon which the Supreme Court has rested the power of courts of equity to grant reimbursement for the costs of litigation, and bearing in mind that "individualization in the exercise of a discretionary power will alone retain equity as a living system and save it from sterility", we cannot doubt that the District Court had power to entertain the supplemental petition and to make an appropriate allowance thereon.

It may be suggested that if we are right in this conclusion, then by the same token the plaintiff will now be entitled to go back to the District Court with still another supplementary petition for allowance of expenses, that is, the expenses of the present appeal. We think that this is logically so, and that the District Court will have power to entertain such a petition if filed. Whether an allowance should be made, and if so how much, lies in the sound discretion of the District Court upon a recapitulation of the appropriate equitable considerations.

The decree of the District Court is affirmed insofar as it allows the original petition for reimbursement in the amount of $1,214.51. In respect to the denial of the plaintiff's supplemental petition for reimbursement, filed June 1, 1939, the decree of the District Court is reversed and the case remanded for further proceedings not inconsistent with this opinion. In both the present appeals ordinary taxable costs shall be allowed to the plaintiff.