See also D.C., 371 F.Supp. 1343.

**SECURITIES AND EXCHANGE COM-MISSION, Plaintiff,**

**Securities Investor Protection Corporation, Applicant,**

v.

**ABERDEEN SECURITIES CO., INC., et al., Defendants.**

**Civ. A. No. 4224.**

United States District Court, D. Delaware.

Aug. 29, 1974.

Jerome E. Bogutz, Philadelphia, Pa., applicant for fee and expenses reimbursement.

John Biggs, III, Wilmington, Del., for trustee.

Wilfred R. Caron, Washington, D. C., Associate Gen. Counsel, for Securities Investor Protection Corp.

## OPINION

EDWIN D. STEEL, Jr., Senior District Judge.

Before the Court is an application by an attorney, Bogutz, for counsel fees and expenses incurred in connection with the liquidation of the debtor, Aberdeen Securities, Inc., under the Securities Investor Protection Act of 1970, 15 U.S.C. § 78aaa et seq. Bogutz represented Raizes in the proceeding and filed a claim on their behalf against Aberdeen for $500. This was on the theory that Raizes had paid $500 as the subscription price for shares of stock of Boatland, Inc. which had never been issued. Bogutz agreed to represent Raizes on a contingent basis under which Bogutz was to be paid by Raizes 50% of any sums recovered by Raizes. This Court disallowed the Raizes claim as

well as Bogutz' application to prosecute the claim as a class action. Upon appeal the Court of Appeals affirmed the holding that a class action was not appropriate but remanded the Raizes claim "for appropriate findings in order to determine if there was, on the filing date, a legally sufficient claim by the Raizes against the debtor because of an obligation to return the money which had been made available to Aberdeen for purchase of a nonexistent stock." Securities and Exchange Commission v. Aberdeen Securities Co., Inc., et al., 480 F.2d 1121, 1126–1128 (3rd Cir. 1973).

Before further action was taken on the remand, SIPC 15 USC § 78ccc reviewed the facts and the law and concluded that if the trustee should determine to allow the Raizes claim it would support his action. The trustee allowed the Raizes claim as well as the claims of twenty-eight other "Boatland" claimants involving facts identical to the claim of Raizes. The total Boatland claims allowed, including Raizes, amounted to $11,656. The allowance of the Boatland claims was consistent with the Court of Appeals statement in 480 F.2d at 1128:

> "A ruling by the Court as to one category of creditors certainly would apply to all in that group."

Bogutz seeks an allowance for services of $14,375 and for expenses of $1,064.59.

Bogutz argues that he is entitled to be recompensed for several reasons. First, that he and the other twenty-eight Boatland claimants were directly benefited by his efforts in furthering the allowance of their claims. Second, claimants in other SIPC cases whose positions were like those of the Boatland claimants indirectly benefited by the decision as to which Bogutz contributed importantly. Third, his efforts served to effectuate the congressional policy reflected in the Securities Investor Protection Act, and fourth, his efforts secured proper notification to all customers of Aberdeen of the proceeding and the proposed distribution by the trustee.*

So far as source of payment is concerned, Bogutz asks that part of his claim be paid by Raizes and the twenty-eight other Boatland claimants whom he argues were the direct beneficiaries of his service, and that SIPC pay such additional amount of his claim as the Court deems equitable and proper.

### Payment By The Boatland Claimants

In Sprague v. Ticonic Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1938) a beneficiary of a trust who had by litigation established a lien on assets in the hands of a receiver filed a petition in the proceeding for counsel fees and expenses, in addition to taxable costs, for having obtained the decision which was beneficial to fourteen other beneficiaries who thereby obtained liens against similar trust assets. The litigation had not been brought as a representation of the other trust beneficiaries, nor was a fund recovered in which they were entitled to share. Nonetheless, the Court held that under its historic powers an equity court had the authority to make the allowance. The Court said, "for all practical purposes" a fund had been created for the benefit of others by virtue of *stare decisis*, and the formalities of the litigation "hardly touch the power of equity in doing justice as between a party and the beneficiaries of his litigation". Accordingly, the Court remanded the case for the district court to make a discretionary determination whether any allowance should be made payable by the persons who had benefited by the decision.

■ The reasoning of the *Sprague* decision supports this Court's power to make an allowance to Bogutz for his services and expenses payable out of the distributive share of the Boatland claimants. Since, however, for reasons later to be stated, Bogutz is entitled to be recompensed from estate funds for the benefits he has contributed to it during its

---

* There is no basis in fact for this last ground.

administration, and since the award payable from them will fairly compensate him for the efforts which he expended for the benefit of the Boatland claimants, the Court, as a matter of discretion, will not burden their distributive share of the assets with Bogutz fees and expenses. This conclusion makes Schleit v. British Overseas Airways Corp., 133 U.S.App.D.C. 273, 410 F.2d 261 (1969) irrelevant, holding as it does that *companies* which were the beneficiaries of a settlement of a suit to which they were not parties may not be held liable in a *plenary action* brought against them by the attorney in the first action for fees based upon benefits which they received in the settlement.

### Payment By The Aberdeen Estate

The power of the Court to allow compensation and expenses from the Aberdeen estate is governed by Chapter X of the Bankruptcy Act. Speaking in the analogous case of authority to make allowances to the trustee and his counsel in a SIPC liquidation, the Court said in Securities Investor Protection Corporation v. Charisma Securities Corporation, 352 F.Supp. 302, 306 (S.D.N.Y. 1972):

"The 1970 Act requires that liquidation proceedings be conducted in accordance with, and as though they were being proceeded with under Chapter X of the Bankruptcy Act. Section 6(c)(1) of the 1970 Act, 15 U.S.C. § 78fff(c)(1). With respect to the allowance of compensation to the trustee and his counsel, the clear intent of this statute is to make applicable to a SIPC liquidation Section 241 of the Bankruptcy Act, 11 U.S.C. § 641, which provides in pertinent part that 'the judge may allow . . . reasonable compensation for services rendered . . . in a proceeding under this chapter . . . by the trustee and . . . [his] attorney. . . .' "

See also Securities & Exchange Commission v. Packer, Wilbur & Co., Inc., et al., 362 F.Supp. 510, 517 (S.D.N.Y. 1973).

Applicable to the instant case is § 243 of Chapter X of the Bankruptcy Act, 11 U.S.C. § 643 which provides:

"The judge may allow reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred by creditors and stockholders, and the attorneys for any of them, in connection with the submission by them of suggestions for a plan or of proposals in the form of plans, or in connection with objections by them to the confirmation of a plan, or in connection with the administration of the estate. In fixing any such allowances, the judge shall give consideration only to the services which contributed to the plan confirmed or to the refusal of confirmation of a plan, or which were beneficial in the administration of the estate, and to the proper costs and expenses incidental thereto."

In its application to a SIPC liquidation, the reference in § 643 to services performed by an attorney in connection with a "plan or of proposals in the form of plans, or in connection with objections by them to the confirmation of a plan" is meaningless for 15 U.S.C. § 78fff(c)(1) provides that "in no event shall a plan of reorganization be formulated". In a SIPC liquidation the only compensation and expense reimbursement permitted to be made to an attorney are those "which were beneficial in the administration of the estate". 11 U.S.C. § 643.

The "estate" in § 643 means the estate in connection with which the services were rendered. It does not refer to other SIPC liquidations in connection with which no services were rendered by the attorney seeking the fee. So that the only authority under § 643 for awarding Bogutz any payment for services out of the debtor's estate is if the services were "beneficial in the administration of the [Aberdeen] estate."

Initially the Raizes claim and other Boatland claims had been disallowed. Their subsequent allowance by the trustee was due in part to Bogutz' appeal from the Raizes disallowance and the re-

mand by the Court of Appeals for further findings and consideration of that claim. What transpired after the remand which led to the trustee's determination to allow the Raizes claim and those of other Boatland claimants was due for the most part to SIPC efforts in developing the facts and analyzing the law. Bogutz gave SIPC little assistance; his efforts, after remand, were minimal.

■ Insofar as Bogutz played a part in having the trustee recognize the validity of the Raizes claim and the others like it, his efforts "were beneficial in the administration of the [Aberdeen] estate". If Bogutz had not taken the appeal on behalf of Raizes the liquidation would have been carried out without the trustee recognizing the rights of the Boatland claimants, contrary to their entitlement under the law, as later determined by the Court of Appeals. It was a benefit to the estate administration to have the law adhered to rather than violated as would have been the case had Bogutz not prosecuted Raizes claim in the Court of Appeals. Neither party has brought to the Court's attention any decisional law relevant, directly or by analogy, to this interpretation of 11 U.S.C. § 643 as it relates to a SIPC proceeding. The conclusion which the Court has arrived at seems eminently reasonable.

From what has been said it is apparent that Bogutz is entitled to be paid a fee and expenses out of estate funds for the benefit which his services contributed to its administration. This benefit cannot be calculated in terms of dollars. It was intangible.

The amount which Bogutz should be paid is not without difficulty. The difficulty arises because a part of the time and money which Bogutz expended related to his unsuccessful effort in this Court, the Court of Appeals, and the Supreme Court of the United States, to have the claims of other creditors allowed, Seligsohn, Sabatini and Marsh (hereafter Seligsohn), and to obtain a determination that Raizes and Seligsohn could prosecute their claims as class actions. These unsuccessful efforts were in no way beneficial to the administration of the Aberdeen estate.

■ As to Bogutz' out of pocket expenses, Bogutz advanced $1,064.59, of this amount a total of $310.46 was advanced exclusively for the appeal from the Circuit Court of Appeals to the United States Supreme Court in connection with the Seligsohn claims and the class action aspects of the case. All of the remaining costs, he asserts, cannot be separated or divided between the Seligsohn claims and the Raizes claim but "were advanced for the combined benefit of both classes of litigants". The $310.-46, being exclusively applicable to Seligsohn, is disallowed. Of the remaining costs of $754.13 applicable both to Seligsohn and Raizes, half thereof is disallowed and half, i. e., $377.07, is allowed. In an equitable sense this approximates the out of pocket cost of services for Raizes.

In determining how much of Bogutz claim for services should be allowed, paragraph 3 of his affidavit attached as Exhibit A to the "Reply in Opposition to the Joint Memorandum", etc. is helpful. It states that 119.5 hours of Bogutz' office time was spent on Seligsohn matters exclusively; that 20.7 hours could be designated as exclusively Raizes representation; and that the balance of 101.8 hours was for combined efforts on behalf of both Raizes and Seligsohn. Half of the latter, or roughly 50 hours, may be equitably attributed to service for Raizes as well as the 20 hours which Bogutz spent exclusively for Raizes. This makes a total of 70 hours.

■ Bogutz asserts that his law firm normally charges commercial clients an hourly rate of $75 for a partner and $40 for an associate. The initial petition which Bogutz filed for counsel fees discloses that on the date of its filing approximately the same amount of time had been devoted to the Aberdeen matter by both partners and associates of the Bogutz firm. While no final allocation of time between partners and associates is shown, it may be reasonably assumed that throughout the proceeding

the distribution of labor between the partners and associates was approximately the same. This assumption justifies an allowance of $50 an hour for approximately 70 hours or $3,500, less $250 which presumably Raizes either has or will pay Bogutz under his employment contract. The amount of $3,250 plus $377.07 out of pocket expenses, comes to a total of $3,627.07 which will be allowed.

The amount of the allowance will compensate Bogutz for the benefit which he conferred upon the Boatland claimants as well as the benefit which his efforts conferred upon the administration of the Aberdeen estate. There should not be two separate allowances for the same services which resulted in a dual benefit, and the amount allowed will reasonably pay him for what he has done. While the amount of the allowance has been arrived at by applying a time factor, due regard has been given to the nature, extent and value of the services, having in mind the conservation of the estate in the interest of the creditors. See Bankruptcy Rule 219(c).