USCA1 Opinion

 

 United States Court of Appeals For the First CircuitNo. 98-1902 IN RE: FIDELITY/MICRON SECURITIES LITIGATION [DIANE WEISBURGH, ETC., ET AL. v. FIDELITY MAGELLAN FUND, ET AL.]. ____________________ BERGER & MONTAGUE, P.C., ET AL.,  Appellants. APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Richard G. Stearns, U.S. District Judge] Before Selya, Circuit Judge,  Bownes, Senior Circuit Judge,  and Lipez, Circuit Judge.  Glen DeValerio, with whom Kathleen M. Donovan-Maher, Berman,DeValerio & Pease LLP, Stuart H. Savett, Barbara A. Podell, SavettFrutkin Podell & Ryan, P.C., Sherrie R. Savett, Gary E. Cantor,Berger & Montague, P.C., Stephen T. Rodd, and Abbey, Gardy &Squitieri, LLP were on brief, for appellants.February 23, 1999  SELYA, Circuit Judge. In certain types of complexlitigation, the lawyers' monetary interests often comprise a tailthat wags the dog. So it is here: this dispute over thereimbursement of certain payments fronted by the lawyers is whatremains of a consolidated class action (actually, an amalgam ofsome 16 suits) asserting claims of securities fraud. After thedistrict court approved a global $10,000,000 settlement, theplaintiffs' attorneys filed a petition seeking 30% of the commonfund in fees and approximately $277,000 in out-of-pocket expenses. The district court awarded the movants 17«% of the fund($1,750,000) as counsel fees, but turned down their request forexpenses. See In re Fidelity/Micron Sec. Litig., No. 95-12676-RGS,1998 WL 313735 (D. Mass. June 5, 1998). In refusing reimbursement, the district court alluded tothe movants' failure to provide adequate documentation to supportthe expense request, but it based its ruling principally on its ownStanding Order Regarding Costs. The Standing Order, reprinted inthe appendix hereto, states in substance that, absent exceptionalcircumstances, the court as a matter of practice will eschewreimbursement of certain categories of expenses. To the chagrinof the lawyers who appear as appellants here, the categoriesenumerated in the Standing Order (e.g., postage, facsimiletransmission costs, copying expenses, telephone charges, cost ofcomputer-assisted legal research) enveloped much of what theysought to collect. The one major exception related to the cost ofretaining an expert witness. After the appellants moved forreconsideration of the expense reimbursement request and producedthe expert's billing records, the district court promptly grantedthem the $124,000 they had spent on that front. The court remainedresolute, however, as to the balance of the expenditures. Thisappeal followed. In it, the lawyers protest only the court'srefusal to allow broader expense reimbursement. We begin with bedrock: in situations in which expensesare potentially reimbursable, district courts enjoy wide latitudein shaping the contours of such awards. See In re Thirteen Appeals San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 309 (1stCir. 1995). Such awards are permissible in "common fund" cases but the district court, called upon to make awards of fees and/orexpenses in such a case, functions as a quasi-fiduciary tosafeguard the corpus of the fund for the benefit of the plaintiffclass. See, e.g., Cook v. Niedert, 142 F.3d 1004, 1011 (7th Cir.1998). Consequently, a reviewing court has the right, if not theobligation, to view skeptically efforts by attorneys to chargesubstantial expenses to that account. Even so, law firms are not eleemosynary institutions, and lawyers whose efforts succeed in creating a common fund for thebenefit of a class are entitled not only to reasonable fees, butalso to recover from the fund, as a general matter, expenses,reasonable in amount, that were necessary to bring the action toa climax. See Swedish Hosp. Corp. v. Shalala, 1 F.3d 1261, 1265(D.C. Cir. 1993); In re Nineteen Appeals San Juan Dupont PlazaHotel Fire Litig., 982 F.2d 603, 606 (1st Cir. 1992). This general rule does not give counsel carte blanche tospend freely and expect that reimbursement automatically willfollow. Administration of the rule is subject to the trial court'sinformed discretion. Reasonableness is the touchstone, and arequest that promises to yield an unreasonable result must betrimmed back or rejected outright. See In re Coordinated PretrialProceedings in Petroleum Prods. Antitrust Litig., 109 F.3d 602, 607(9th Cir. 1997) (explaining that "[r]easonableness is the goal,"and that courts should avoid "mechanical or formulaic application"of rigid rules). Moreover, because each common fund case presentsits own unique set of circumstances, trial courts must assess eachrequest for fees and expenses on its own terms. See Camden ICondo. Ass'n, Inc. v. Dunkle, 946 F.2d 768, 774-75 (11th Cir.1991). After all, the authority to order reimbursement from acommon fund has its origins in equity and, when a court exercisesthis equitable power, individualization is the name of the game. See Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 167 (1939). Here, the district court's Standing Order raises a coreconcern: it does not leave sufficient room for individualizedconsideration of expense requests. It may very well be that, atthe end of the day, a district court will decide in most cases thatthe lawyers cannot justify particular kinds of expense requests. But, for the most part, that decision must be made afterconsideration of each particular request; it is not to be assertedbeforehand upon the authority of an inflexible, informallypromulgated rule. Due to this lack of individualized consideration, wevacate the district court's order denying expense reimbursement andremand so that the court may reconsider the request. We hasten toadd that we do not equate reconsideration with compulsoryreimbursement. For one thing, in percentage-of-the-fund cases,district courts may, if they so elect, set the percentage at alevel which not only accounts for fees, but also suffices to coverreimbursable expenses in whole or in part. Insofar as we can tell,the district court did not take this route, but we leave open thepossibility that the court did so implicitly, or that it will doso on remand. We caution, however, that such an approach requiresthe court to set forth specific reasons for selecting thepercentage and to explain its analysis with particularity. See,e.g., Camden I, 946 F.2d at 775. For another thing, lawyers are not necessarily entitledto the quantum of reimbursement to which they aspire. To thecontrary, they must establish the reasonableness of their requests. In the course of that exercise, the trial court may insist onexamining particulars, such as receipts and logs, so that it candetermine whether the claimed expenses were reasonable, necessary,and incurred for the benefit of the class. Unverified expenses maybe rejected out of hand. See Weinberger v. Great N. Nekoosa Corp.,925 F.2d 518, 527 (1st Cir. 1991). The lower court also may restrict reimbursement to thoselawyers or law firms who pulled the laboring oar in prosecuting thecase. Equity ordinarily contemplates that those responsible forbringing home the bacon will receive repayment of expenditures madein that endeavor. This is simply another way of determiningwhether certain expenditures were reasonable and necessary to thecreation and maintenance of the common fund. There is one last matter. In their appellate brief, andagain at oral argument, the appellants informed us that they seekcounsel fees and expenses referable to work done in this court. On appeal, awards of counsel fees and expenses for litigating themagnitude of attorney reimbursement in common fund cases are fewand far between. Although we ruled long ago that trial courts hadsome discretion in this regard, see Sprague v. Ticonic Nat'l Bank,110 F.2d 174, 177 (1st Cir. 1940), recent case law suggests that,even if a measure of discretion exists, such awards should rarely,if ever, be bestowed, see In re Washington Pub. Power Supply Sys.Sec. Litig., 19 F.3d 1291, 1299 (9th Cir. 1994); United States v.110-118 Riverside Tenants Corp., 5 F.3d 645, 646-47 (2d Cir. 1993)(per curiam); Lindy Bros. Builders, Inc. v. American Radiators &Standard Sanitary Corp., 540 F.2d 102, 111 (3d Cir. 1976) (enbanc). The concern animating the general rule is evident: oncea common fund is established, class members and class counsel windup playing a zero sum game, in which every dollar awarded tocounsel represents one dollar less that is available fordistribution to class members. See Weinberger, 925 F.2d at 524. In this instance, we conclude that the lawyers are notentitled to fees and expenses incurred while prosecuting theappeal. The decisive datum is that they did not render the subjectservices or incur the subject expenses in an effort to create ormaintain the common fund. Moreover, no class member opposed theirapplication, and the appellants have given us no good reason why,in the circumstances of this case, we should overlook the generalrule that disfavors reimbursement from the common fund forappellate litigation over fees and expenses. Because theappellants' interests in this proceeding run counter to that oftheir clients, we reject the request for the payment of fees and/orexpenses in connection with this appeal. We need go no further. For the reasons elucidated above,we direct the district court to mull the appellants' request forexpenses anew.Vacated and remanded. APPENDIX STANDING ORDER REGARDING COSTS As a matter of practice, the court does not award, unlessspecial circumstances are shown, the following categories of costs: (1) postage, express mail costs, courier fees, and the cost of electronic facsimiles; (2) ordinary copying charges; (3) travel expenses; (4) the costs of deposition transcripts not used at trial; (5) fees for clerical and word processing services; (6) telephone charges; (7) office supplies; (8) exemplification costs for chalks and exhibits not used at trial; (9) automated document preparation costs; (10) charges for computer research services, and (11) jury consultant fees.