[Cite as *Summers v. Lancia Nursing Home*, 2017-Ohio-9218.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| KAREN J. SUMMERS, AS ADMINISTRATRIX OF THE ESTATE OF ARLA JOHNSON, AND PERSONAL REPRESENTATIVE, | ) ) ) ) | |
| | ) | CASE NO. 17 BE 0011 |
| PLAINTIFF-APPELLANT, | ) ) | |
| VS. | ) | OPINION |
| | ) | |
| LANCIA NURSING HOMES, INC., D/B/A BELMONT MANOR NURSING HOME et al., | ) ) ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS: Civil Appeal from the Court of Common Pleas of Belmont County, Ohio. Case No. 12-CV-0072

JUDGMENT: Affirmed.

JUDGES:

Hon. Carol Ann Robb
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated: December 20, 2017

[Cite as *Summers v. Lancia Nursing Home*, 2017-Ohio-9218.]
APPEARANCES:

For Plaintiff-Appellant:

Atty. Geoffrey C. Brown
Atty. Scott S. Blass
Atty. Tyler Smith
Atty. James B. Stoneking
Bordas & Bordas PLLC
1358 National Road
Wheeling, West Virginia 26003

For Defendants-Appellees:

Atty. James K. Reuss
Atty. Karen M. Cadieux
Carpenter Lipps & Leland LLP
280 Plaza, Suite 1300
280 N. High Street
Columbus, Ohio 43215

Atty. Martin T. Galvin
Atty. Thomas A. Prislipsky
Reminger Co., L.P.A.
101 West Prospect Avenue,
Suite 1400
Cleveland, Ohio 44115-1093

ROBB, P.J.

**{¶1}** Plaintiff-Appellant Karen J. Summers, Administratrix of the Estate of Arla Johnson appeals the decision of Belmont County Common Pleas Court denying her Civ.R. 60(B) motion to vacate the trial court's ruling on her Civ.R. 59 new trial motion.

**{¶2}** This appeal is the third appeal from the underlying case. The first appeal was from a discovery order, which this court determined was not a final appealable order. *Summers v. Lancia Nursing Homes, Inc.*, 7th Dist. No. 12 BE 0039 (August 30, 2013) J.E. (*Summers I*). The second appeal addressed the trial court's denial of the Civ.R. 60(B) motion. *Summers v. Lancia Nursing Homes, Inc.*, 7 Dist. No. 15 BE 0063, 2016-Ohio-7935 (*Summers II*). In *Summers II*, we held the trial court abused its discretion when it failed to hold an evidentiary hearing to determine whether Civ.R. 60(B)(1) and the second prong of the *GTE* test was met. Thus, the matter was remanded for an evidentiary hearing. Following the evidentiary hearing, the trial court denied the Civ.R. 60(B)(1). The issue now before us is whether the trial court violated the law of the case doctrine and the mandate rule.

**{¶3}** For the reasons expressed below, the trial court did not violate either rule. The trial court's decision is affirmed.

Statement of the Case

**{¶4}** In early 2012, Appellant filed a medical malpractice and wrongful death complaint against Defendants–Appellees Lancia Nursing Homes Inc. d/b/a Belmont Manor Inc. (Appellee Belmont Manor), Dr. Carmel C. Shaw–Nieves, and Dr. Divakar Sydney Bangera. Decedent Arla Johnson was a resident of Appellee Belmont Manor and Appellees Drs. Shaw–Nieves and Bangera were her doctors.

**{¶5}** The case proceeded through discovery. A discovery order was appealed to our court and we determined the order was not a final appealable order. *Summers I,* August 30, 2013 J.E.

**{¶6}** Trial occurred in April 2015 and the jury returned a defense verdict. 4/28/15 J.E. Following the verdict, Appellant filed a timely Civ.R. 59 motion for a new

trial. Appellant did not file a notice of appeal from the judgment entry memorializing the jury verdict because pursuant to App.R. 4(B)(2), the filing of the motion for new trial extended the time to file a notice of appeal. The time for filing a notice of appeal from the jury verdict and the ruling on the new trial motion began to run when the trial court entered the judgment on the motion for new trial. App.R. 4(B)(2).

{¶7} Appellees each filed their own motion in opposition to the Civ.R. 59 motion. 7/6/15 Appellee Dr. Bangera's Motion in Opposition; 7/7/15 Appellee Dr. Shaw–Nieves' Motion in Opposition; Appellee Lancia Nursing Homes, Inc., 7/9/15 Appellee Belmont Manor's Motion in Opposition. Appellant filed a combined reply to the motions in opposition. 7/14/15 Reply. Neither Appellant's Civ.R. 59 motion, nor her response in opposition to the motion asked for a hearing on the new trial motion. 6/23/15 Motion; 7/14/15 Reply.

{¶8} The trial court decided the new trial request on the briefs and denied Appellant's motion. 7/21/15 J.E. The judgment indicated the clerk of courts was to serve copies on all parties or their attorneys. The docket indicated the clerk served copies by regular mail on July 21, 2015 to James Reuss, Kevin Coleman, Thomas Prislipsky, and Scott Blass, the attorneys for Appellees and Appellant.

{¶9} On August 27, 2015, Appellant filed a motion to vacate based on Civ.R. 60(B), Civ.R 58, and the court's inherent authority to vacate judgments. Appellant argued counsel did not receive the denial of the motion for a new trial and discovery of the July 21, 2015 judgment did not occur until August 24, 2015 when Attorney Geoffrey Brown audited his open files. Attached to the motion were affidavits from Attorney Geoffrey Brown and Attorney Scott Blass, attorneys working for Bordas & Bordas, PLLC, the law firm representing Appellant. In his affidavit, Attorney Brown explained he asked Attorneys Stoneking, Smith, and Blass if it would be advisable to request a hearing on the motion for new trial. Attorney Stoneking checked the online docket and discovered the July 21, 2015 order denying the motion for new trial and the clerk's notation that Attorney Blass was served by regular mail. As a result, Attorney Brown talked to Attorney Blass, interviewed his own administrative staff, examined the firm's computer files, and examined the firm's hard copy file to

determine if the order was received. Based on his investigation, he determined the firm did not receive the order. Attorney Blass also avowed he did not receive a copy of the order through mail and was unaware of its existence until August 24, 2015.

**{¶10}** Appellee Belmont Manor filed a motion in opposition to the motion to vacate. 9/2/15 Appellee Belmont Manor Motion. Appellees Dr. Bangera and Dr. Shaw–Nieves filed separate motions to join in Appellee Belmont Manor's motion in opposition to relief from judgment. 9/3/15 Appellee Dr. Bangera Joinder Motion; 9/10/15 Appellee Dr. Shaw–Nieves Joinder Motion. The trial court denied the motion to vacate without holding an evidentiary hearing. 9/2/15 J.E.

**{¶11}** Appellant appealed the order arguing the trial court erred in denying Civ.R. 60(B) relief. *Summers II*, 2016-Ohio-7935. In *Summers II*, we noted Appellant acknowledged the motion to vacate was not filed for the purpose of asking the trial court to reconsider its ruling, but was filed to enable Appellant to perfect his appeal. The motion to vacate was filed because Appellant's attorneys claimed they did not receive the July 21, 2015 order denying the motion for a new trial. Discovery of the order did not occur until after the 30 day appeal time had expired. *Id.* at ¶ 16.

**{¶12}** This court held given the circumstances, Civ.R. 60(B) was the proper means to attack the July 21, 2015 judgment. *Id.* at ¶ 18-28. We then discussed the *GTE* test and explained the first and third prongs of the test were easily met. *Id.* at ¶ 29-40. As to the second prong, Appellant asserted counsels' actions constituted excusable neglect. *Id.* at ¶ 36. We stated given the affidavits from the attorneys, the trial court should have held an evidentiary hearing to determine whether the attorney's excuse for failing to know about the final judgment was excusable neglect. *Id.* at ¶ 40. Thus, we ultimately determined there was merit with the appeal; the trial court should have sua sponte held an evidentiary hearing since the issue before it was fact specific. *Id.* at ¶ 40. Accordingly, we remanded the matter to the trial court for an evidentiary hearing. *Id.* at ¶ 40-41.

**{¶13}** An evidentiary hearing was held on January 18, 2017. Attorneys Scott Blass and Geoffrey Brown testified. 1/18/17 Tr. Following the hearing, each party filed a post-hearing brief in support of their position. 1/31/17 Appellee Belmont

Manor Brief; 2/1/17 Appellant Brief; 2/1/17 Appellee Dr. Shaw-Nieves Brief; 2/1/17 Appellee Dr. Bangera Brief.

**{¶14}** On February 13, 2017, the trial court denied Civ.R. 60(B) relief. In rendering its ruling, the court stated:

> The Plaintiff's case was remanded to this Court for an Evidentiary Hearing in regard to their 60(B) Motion. The Plaintiff's testimony essentially consisted of Attorneys Blass & Brown reiterating their affidavits previously filed with this Court setting forth that they didn't receive a copy of this Court's July 21, 2015 Order. They further testified that neither checked the online docket. Four attorneys from the Bordas & Bordas Law Firm participated in this case. Only one filed a notice of appearance. Attorney Smith failed to file a notice of appearance, even though his office is located in another city (Pittsburgh), thus, removing his office from those receiving notice from the clerk. This Court does not know what the testimony of Attorney Smith and Attorney Stoneking would have revealed in that neither took the stand to testify. Whether they checked the online docket or not and whether they then failed to act was not presented to this Court. Additionally, the testimony revealed that during the month in question, the Bordas Law Firm had an office across the street from the Belmont County Courthouse and therefore could have easily checked the Clerk's docket. Inexplicably, the person or persons responsible for receiving the mail at the Bordas Law Firm were not called as witnesses at the Evidentiary Hearing.

> The most troubling testimony involved the procedure the Bordas Law Firm had in place to provide for protection against missing Appellate deadlines. They had no procedure. There was no tickler system, no automatic 30 day calendar check, nothing. In fact, pursuant to testimony at the Evidentiary Hearing, the only reason the four attorneys

on the case checked the docket at all was because there was a discussion about whether they should ask for a hearing on their Motion for New Trial. They then stumbled upon this Court's order which had been filed on July 21, 2015 placing them past the Appellate Rule 4(A) 30 day deadline.

Pursuant to Griesmer "the vicissitudes of mail service mandate regular inspection of the electronic docket." None of the four attorneys nor any of their staff did so, or if in fact someone did, no one took action thereafter. Civil Rule 58 does not require receipt of notice, but rather "The failure of any party to receive such notice shall not affect . . . the running of the time for appeal." At the time of the Court's July 21, 2015 ruling, no one at the law firm of Bordas & Bordas was tracking the Appellate Rule deadlines in any cases in any manner whatsoever. There was no tickler system, no automatic calendar follow up to protect against missed deadlines. It is telling that since this case, there are at least some individual efforts being made to protect against the missing of Appellate Court deadlines. It was the "carelessness, inattention, or willful disregard of the process of the Court" as set forth in Vanest that resulted in the missed deadline in the case at bar.

This matter was remanded to this Court for Evidentiary Hearing and the weighing of evidence. The same took place on January 18, 2017. The Plaintiff chose what evidence to present and what not to present. This Court finds said evidence to be unconvincing. When taking "into consideration all the surrounding facts and circumstances," to grant Plaintiff's 60(B) motion would "serve as an emasculation of the pleading rules and time limits" as set forth by the Supreme Court in Griffey supra. This Court is not willing to set such a precedent for violation of pleading rules and time limits. Wherefore, after due consideration of the exhibit presented at the hearing herein, the credibility of the witness and the

post hearing briefs, this Court hereby denies Plaintiff's Motion for Relief From Judgment Order.

2/13/17 J.E.

**{¶15}** Appellant timely appealed raising one assignment of error.

<u>Assignment of Error</u>

"The trial court erred in denying the plaintiff's motion for relief from judgment under Civ.R. 60(B)."

**{¶16}** Appellant's argument is based on the law of the case doctrine and the mandate rule. Appellant contends the trial court allowed the evidentiary hearing to exceed the scope of our "limited remand" and relied on the information that was beyond the scope to render its ruling.

**{¶17}** The law of the case doctrine "provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E .2d 410 (1984). This rule applies to issues previously resolved within the same case. *Reid v. Cleveland Police Dept.*, __ Ohio St.3d __, 2017-Ohio-7527, __ N.E.3d __, ¶ 11.

**{¶18}** The appellate mandate rule pertains to "the relationship between appellate and inferior courts, [and] is a jurisdictional bar on the inferior court's authority to reconsider issues that were expressly or impliedly decided in a previous appeal." *Fritzgerald v. City of Cleveland Civ. Serv. Commission*, 8th Dist. No. 104492, 2017-Ohio-7086, ¶ 24, citing *Phillips v. Houk*, 587 Fed.App. 868, 871 (6th Cir.2014). The Eighth Appellate District further explained:

> An appellate mandate works in two ways: it vests the lower court on remand with jurisdiction and it gives the lower court on remand the authority to render judgment consistent with the appellate court's judgment. Under the "mandate rule," a lower court must "carry the mandate of the upper court into execution and not consider the questions which the mandate laid to rest." *Sprague v. Ticonic Natl.*

*Bank* (1939), 307 U.S. 161, 168, 59 S.Ct. 777; see, also, *State ex rel. Cordray v. Marshall*, 123 Ohio St.3d 229, 2009–Ohio–4986, 915 N.E.2d 633, at ¶ 32 * * *. The lower court may, however, rule on issues left open by the mandate. *Id.* But when the mandate leaves nothing left to decide, the lower court is bound to execute it. *Id.*

*State v. Carlisle*, 8th Dist. No. 93266, 2010–Ohio–3407, ¶ 16.

**{¶19}** Appellant contends the trial court violated both of these rules when it permitted testimony about the online docket.

**{¶20}** In *Summers II*, we remanded the case for an evidentiary hearing. *Summers II*, 2016-Ohio-7935, ¶ 40. We determined the first and third prongs of the *GTE* test were clearly met; however, as to the second prong, an evidentiary hearing was required. *Id.* After citing our previous case reviews of when appellate courts have found excusable neglect, we stated:

> The facts of this case could be deemed comparable to those situations. In filing the motion for Civ.R. 60(B), Appellant provided affidavits from two attorneys indicating the procedure followed after mail is received at the law firm, and both attorneys avowed they did not receive the notice in the mail. The actions of the attorneys, if believed, do not show a complete disregard for the judicial system. Consequently, Civ.R. 60(B)(1) could be applicable if the affidavits from the attorneys is believed.

*Id.* at ¶ 39.

**{¶21}** We then specifically stated, "the trial court should have held an evidentiary hearing to determine whether Civ.R. 60(B)(1) was met, i.e. was the attorneys' excuse for failing to file a timely notice of appeal believable." *Id.* at ¶ 40. Thus, the remand was limited to the issue of excusable neglect. Our decision and direction did not include a limitation that evidence concerning the online docket could not be considered. Accordingly, the trial court did not violate the law of the case or the mandate rule by hearing evidence about the online docket.

**{¶22}** Admittedly, the Eighth District's statement, "the vicissitudes of mail service mandate regular inspection of the electronic docket", made in *Griesmer v. Allstate,* 8th Dist. No. 91194, 2009-Ohio-725, ¶ 21 was raised to this court in the briefs in *Summers II.* Thus, the issue was before this court. In our *Summers II* opinion, we did not determine whether there is a duty to regularly check the electronic docket nor did we determine what regular inspection means. Accordingly, there is no absolute duty to check the online docket.

**{¶23}** Case law in our district supports this conclusion. The reason we are reluctant to impose such duty is technology is not consistently available across our district. For example, one county in our district does not have an online docket, another county's online docket became available only recently, and a third county's online docket is available but not accessible to this court due to firewalls. Imposing a duty to regularly check the docket in our district would require different degrees of duty depending on the county. Our district is not alone; other multicounty districts have counties with different levels of online accessibility. Furthermore, if there is a duty to check an online docket regularly, then the rule would apply to pro se litigants. *See State ex rel. Leon v. Cuyahoga Cty. Court of Common Pleas*, 123 Ohio St.3d 124, 2009-Ohio-4688, 914 N.E.2d 402, ¶ 1; *Fuller v. Mengel*, 100 Ohio St.3d 352, 2003-Ohio-6448, 800 N.E.2d 25, ¶ 10; *Sabouri v. Ohio Dept. of Job & Family Servs.*, 145 Ohio App.3d 651, 654, 763 N.E.2d 1238 (2001) ("[P]ro se litigants * * * are held to the same standard as litigants who are represented by counsel."). Although the accessibility to internet is vast there are still residents of Ohio who do not have access to internet.

**{¶24}** Our decision in *Summers II* did not determine there is a duty to regularly check the online docket in this district. However, that does not mean use or knowledge of the online docket cannot be considered in determining excusable neglect. There may be situations where an online docket checking system could provide evidence of excusable or inexcusable neglect. For instance, if an attorney knew of the online docket in county A and B, and has a system of regularly checking the online docket in county B, but not checking the online docket in county A, then

there may be evidence that the attorney's conduct in failing to check the online docket in county A was not excusable neglect. Furthermore, considering the language used in remanding the matter for an evidentiary hearing, this court did not eliminate the allowance of evidence of the online docket.

**{¶25}** Therefore, this court concludes the trial court did not violate the law of the case nor the mandate rule.

**{¶26}** We shall now address Appellant's argument the trial court abused its discretion in denying the motion to vacate. In holding there was no excusable neglect, the court indicated two of the four attorneys working on the case did not testify. Therefore, whether or not they checked the online docket and whether they failed to act was not presented to the court. Also, the person responsible for receiving the mail at the law firm was not called as a witness. The court also stated the testimony indicated the firm had no procedure to protect against missing an appellate deadline. There was no tickler system nor 30 day check. The court stated the only reason the attorneys checked the docket was to discuss if they should ask for a hearing on the motion for new trial. The court then cited the *Griesmer* case for the duty to check the online docket. The court stated it found the evidence to be "unconvincing" and when taking into consideration all surrounding facts and circumstances, this was not excusable neglect. 2/13/17 J.E.

**{¶27}** The transcript of the hearing does indicate only two of the four attorneys working on the case testified at the hearing; Attorney Tyler Smith and Attorney Jay Stoneking did not testify. Attorneys Smith and Stoneking tried the case to the jury, and worked on and filed the motion for new trial. Attorney Smith's primary office was in Pittsburgh, Pennsylvania, and there was no testimony offered from him on whether he received notice or checked the online docket.

**{¶28}** The person who received the mail also did not testify. Appellant states that person is retired. However, retirement would not prevent the person from testifying.

**{¶29}** Attorney Blass testified the prompting to check the online docket was to see if a hearing was set for the new trial motion. Tr. 10, 15. Attorney Brown testified

he internally audits his cases at least every two months, but usually it is every couple weeks. Tr. 51. In doing that audit, Attorney Brown checked this case and sent out an email to the other attorneys on the case asking what needed to be done next. Tr. 52. According to Attorney Brown that prompted Attorney Blass to suggest the online docket be checked to see if anything was set. Tr. 52. That led to the discovery of the July 21, 2015 judgment on August 24, 2015. Tr. 52.

**{¶30}** Upon discovering the order, an investigation ensued as to why this was the first time they had heard of the order. Attorney Brown first checked to see if the clerk had Attorney Blass' name and the correct address, which it did. Tr. 53. Attorney Brown testified about the firm's procedure upon receiving mail. One employee collects the mail, separates it by addressee, and then gives it to the staff of the attorney. Tr. 8. Attorney Blass stated his mail went to his paralegal who scans the mail, saves the electronic copy to the electronic file, and gives the hard copy to him. Tr. 8. The hard copy is date stamped. Tr. 8. Attorney Blass then takes whatever action is needed depending on the content of the correspondence. Tr. 8-9. After that, the hard copy is put in his out box. Tr. 9-10.

**{¶31}** Attorney Blass and Attorney Brown both reviewed the computer file to make sure the order had not come in and been overlooked; the computer file did not show receipt of the order. Tr. 11, 55. Attorney Brown looked through the hard file to see if the order was in there. Tr. 11, 54-55, 56. It was not. Tr. 12, 55, 56. Furthermore, no staff recalled seeing the order. Tr. 12, 56. Attorney Brown also stated he communicated directly to Attorney Stoneking to see if he was aware of the order and he also emailed Attorney Smith to see if he was aware of the order. Tr. 54. Both responded they were not. Tr. 54. Both Attorney Blass and Attorney Brown presumed Attorney Smith did not check the online docket at any time between June 23, 2015 (the date the new trial motion was filed) and August 24, 2015 (the date the July 21, 2015 order was discovered) because given the inquiry he would have told them he did. Tr. 27, 79. Attorney Brown also presumed Attorney Smith's paralegal did not check the online docket. Tr. 80.

**{¶32}** When asked if he or his staff put a reminder on the firm's case management online docket or calendar to check for a trial court order following the filing of the new trial motion, Attorney Blass explained:

> As a firm, I'm not aware of any procedural mechanism by which we've adopted some type of protocol that we can be on the lookout for orders we don't receive. I mean, no. I can tell you that, you know, the protocol is you once you're advised – once you're informed of a deadline, you make sure it's docketed. I know personally, like Geoff, I make it a habit to review virtually every one of my files every 30 days, because I am responsible for a couple of associates and monitoring their cases. I'll make it through virtually all my cases to make sure, to see if there's anything that needs to be done.
>
> Now, like Geoff I think in this case, I would have done the same thing and said, "This hasn't been set for hearing, we haven't heard anything. Let's see if we can get it moving." And at that point, the online docket was checked.
>
> * * *
>
> No. I'm unaware of any system that would – that when we file a motion, would say okay, we want to do X within 30 days. I mean, when we get an order that says, you know, that's when we enter our actual deadline. I guess the one system that's in place, at least for Geoff and I, and I think others, is just the constant monitoring of all of our files to see what activities are going on in them, to see if – what we can do to help move the case along. In plaintiff's practice, you want to keep your cases moving. But other than that, you know, then that's really not a computer system; that's just I'm at work on Saturday for eight hours, and I'm going through every one of my files to make sure everything is up to date.

\* \* \*

Wasn't a formal protocol in place for someone to actively every two weeks, every three weeks, every 30 days, check the dockets, I mean, of any particular case. Other that, I think I said, reviewing our files and seeing, okay, nothing has happened in this; let's look into it. Let's figure out what we can do to move it along. But not like some alert would come up on your computer saying – although I have those now; I can have my staff run something out. If my associate hasn't addressed a case for 30 days, it will let me know nothing has been done in the file for 30 days, and I'll take a look at it. But other than that, no.

Tr. 26-27, 33-34, 34-35.

{¶33} The attorneys stated their actions were reasonable in this case. Tr. 43, 59. Attorney Brown stated it was excusable neglect:

Yes, and I know what you're asking, and yes. In context of that, yes. I think that could we have checked the online docket sooner than we did. And I'll say "we". I'll say I. Could I have checked the online docket sooner than I did? I could have. There was nothing that would have prevented me from doing that. I didn't.

However, the sequencing of events here and the timing is something that I don't think is subject to a hard and fast rule when it comes to electronic dockets. When it comes to those things, I think I've developed a practice where there is a lot of factors. It's what's going on with that particular case at the time. A lot of it has to do with my comfort level and familiarity with that particular clerk's office. So, for example, I practice very infrequently in jurisdictions like Cuyahoga County. Certainly more than Cuyahoga County, but Franklin County is another jurisdiction which has electronic dockets. And in those

situations, maybe when you're getting a comfort level at the off—offset of a ca – case, it's a flexible approach.

So is it an attempt by me or our firm to disregard the importance of this? No, it is not.

So yes, I think in that sense, as this is a – it's a mistake. It's a—if you want to talk about the terms of the rule that you're discussing. Excusable neglect, inadvertent mistake, yes, it is.

Tr. 59-60.

**{¶34}** Considering the above, there was a procedure for handling mail, but not necessarily one for checking to see when a final order was issued by a court. Attorney Brown did an internal audit, which is what caught the July 21, 2015 order. In this case, the visiting trial judge was very prompt in ruling on the motion for new trial; the order was issued approximately one week after briefing closed. Tr. 44. The July 21, 2015 order was discovered on August 24, 2015. The Civ.R. 60(B) motion was filed three days later.

**{¶35}** Given the above, the trial court did not abuse its discretion. Although checking the online docket is not mandatory in our district, it is clear Appellant's attorneys knew of the online docket and in other counties checked that docket to keep apprised of cases. Furthermore, a new trial ruling is clearly a final order and it does extend the time for filing an appeal. This is not a situation where a party is blindsided by a final order it was not expecting. A tickler system could have easily been used to check and see if the order was issued. Parties are expected to keep themselves informed on the progress of their case. Moreover, the trial court indicated it did not believe the Attorneys. Appellant did not have Attorney Smith, Attorney Stoneking, and the mail employee testify. The Court found fault in their exclusion and stated, "The Plaintiffs choose what evidence to present and what not to present. This Court finds said evidence to be unconvincing." 2/13/17 J.E. The trial court's reasoning is not unreasonable.

**{¶36}** In conclusion, the law of the case doctrine and the mandate rule were not violated, and the trial court did not abuse its discretion in denying the motion to vacate. The trial court's decision is affirmed.

Donofrio, P.J., concurs.

Waite, J., concurs.