COURT OF CHANCERY
OF THE
STATE OF DELAWARE

TAMIKA R. MONTGOMERY-REEVES
VICE CHANCELLOR

Leonard Williams Justice Center
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

Date Decided: June 18, 2018

Richard M. Beck, Esquire
Sean M. Brennecke, Esquire
Klehr Harrison Harvey Branzburg LLP
919 Market Street, Suite 1000
Wilmington, DE 19801

William M. Lafferty, Esquire
John P. DiTomo, Esquire
Zi-Xiang Shen, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19899

RE: **_Sparton Corporation v. Joseph F. O'Neil et al._**
**_C.A. No. 12403-VCMR_**

Dear Counsel:

This letter opinion addresses Defendants' motion for partial judgment on the pleadings and Defendants' motion for interim attorneys' fees. For the reasons stated below, both motions are granted. This letter opinion assumes familiarity with the facts outlined in the Court's August 9, 2017 memorandum opinion. The current dispute arises from Plaintiff's refusal to release funds held in escrow pursuant to the parties' agreements.

## I.   BACKGROUND

Plaintiff Sparton Corporation ("Sparton") acquired Hunter Technology Corporation ("Hunter") through a reverse triangular merger on April 14, 2015, with

Hunter surviving as a wholly-owned subsidiary of Sparton. Defendants were stockholders and optionholders of Hunter before the merger.

## A. The prior opinion

Sparton alleged in its Complaint that Defendant Joseph F. O'Neil, Hunter's stockholder representative, and other Defendants fraudulently induced Sparton to enter into the merger agreement through which Sparton acquired Hunter (the "Merger Agreement") by presenting false financial statements during negotiations. Sparton also asserted breach of contract claims relating to the Merger Agreement for (1) breach of warranties relating to Hunter's calculation of its working capital (the "Working Capital Claim"); (2) O'Neil's alleged failure to use commercially reasonable efforts to resolve certain liabilities that Hunter incurred before the merger (the "O'Neil Claim"); and (3) Defendants' purported failure to pay certain invoices Hunter incurred before the merger (the "Expenses Claim"). As a result of the purported fraud and contractual breaches, Sparton alleged it had suffered (1) $1,829,455 in damages representing the difference between the inflated working capital it paid for and the working capital that actually existed at closing; (2) unliquidated damages in the amount of fees and costs necessary to resolve the liabilities that O'Neil promised to resolve; and (3) $100,498.70 in damages for the invoices incurred by Hunter for which Sparton now is responsible. Defendants

moved to dismiss all claims except the Expenses Claim. On August 9, 2017, this Court dismissed the Working Capital Claim, O'Neil Claim, and fraud claim for failure to state a claim under Court of Chancery Rule 12(b)(6).[1]

## B. The current dispute

The current dispute arises from Sparton's refusal to release $838,000 held in escrow pursuant to the Merger Agreement and a contemporaneously executed escrow agreement (the "Escrow Agreement") between Sparton and Hunter. On October 14, 2016, Defendants filed counterclaims alleging that the parties' agreements require Sparton to release the escrow funds.[2] On November 7, 2016, Sparton filed its answer to Defendants' counterclaims denying Defendants' claim that the parties' agreements entitle Defendants to release of the escrow funds.[3] On September 22, 2017, Defendants moved for partial judgment on the pleadings under Court of Chancery Rule 12(c) seeking release of the escrow funds and interim attorneys' fees and expenses in the amount of $447,564.03. The Court heard oral arguments on the motion for partial judgment and motion for interim attorneys' fees on March 20, 2018.

---

[1] *Sparton Corp. v. O'Neil*, 2017 WL 3421076 (Del. Ch. Aug. 9, 2017).

[2] Defs.' Am. Countercls. ¶¶ 5-7.

[3] Pl.'s Answer 5.

## II.   ANALYSIS

"This court will grant a motion for judgment on the pleadings pursuant to Court of Chancery Rule 12(c) when there are no material issues of fact and the movant is entitled to judgment as a matter of law."[4]  "When considering a Rule 12(c) motion, the court must assume the truthfulness of all well-pled allegations of fact in the complaint and draw all reasonable inferences in favor of the plaintiff."[5]  "The Court must therefore accord plaintiffs opposing a Rule 12(c) motion the same benefits as a plaintiff defending a motion under Rule 12(b)(6).  As on a Rule 12(b)(6) motion, however, a court considering a Rule 12(c) motion will not rely upon conclusory allegations of wrongdoing or bad motive unsupported by pled facts."[6] "Although 'all facts of the pleadings and reasonable inferences to be drawn therefrom are accepted as true . . . neither inferences nor conclusions of fact unsupported by allegations of specific facts . . . are accepted as true.'"[7]  Thus, "[a]

---

[4]     *McMillan v. Intercargo Corp.*, 768 A.2d 492, 499 (Del. Ch. 2000) (citing *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993)).

[5]     *Id.* (citing *Desert Equities,* 624 A.2d at 1205; *Weiss v. Samsonite Corp.*, 741 A.2d 366, 371 (Del. Ch. June 14, 1999), *aff'd*, 746 A.2d 277 (Del. 1999)).

[6]     *Id.* (citing *Kahn v. Roberts*, 1994 WL 70118, at *5 (Del. Ch. Feb. 28, 1994)).

[7]     *Id.* (citing *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 727 (Del. Ch. 1999)).

trial court need not blindly accept as true all allegations, nor must it draw all inferences from them in plaintiffs' favor unless they are reasonable inferences.'"[8] "In analyzing a motion to dismiss, the court may consider, for carefully limited purposes, documents integral to or incorporated into the complaint by reference. This same standard logically applies on a Rule 12(c) motion as well."[9]

The current dispute between the parties centers on the Court's interpretation of the Merger and Escrow Agreements. "Delaware law adheres to the objective theory of contracts, *i.e.*, a contract's construction should be that which would be understood by an objective, reasonable third party."[10] "When interpreting a contract, this Court 'will give priority to the parties' intentions as reflected in the four corners of the agreement,' construing the agreement as a whole and giving effect to all its provisions."[11] The terms of the contract control "when they establish the parties' common meaning so that a reasonable person in the position of either party would

---

[8]    *Id.*

[9]    *Id.* (citing *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 69-70 (Del. 1995)).

[10]   *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010).

[11]   *Salamone v. Gorman*, 106 A.3d 354, 367-68 (Del. 2014) (quoting *GMG Capital Invs., LLC v. Athenian Venture P'rs I, L.P.*, 36 A.3d 776, 779 (Del. 2012)).

have no expectations inconsistent with the contract language."[12] Standard rules of contract interpretation state that "a court must determine the intent of the parties from the language of the contract."[13] "In giving sensible life to a real-world contract, courts must read the specific provisions of the contract in light of the entire contract. This is true in all commercial contexts, but especially so when the contract at issue involves . . . [the] sale of an entire business."[14]

### A. The Merger and Escrow Agreements do not allow Sparton to withhold the escrow funds

Sparton is withholding $838,000 in escrow funds arguing that it is owed this amount for the O'Neil Claim.[15] Defendants argue that the parties' agreements require Sparton to release the escrow funds because Sparton never had a contractual basis to withhold the funds as Sparton admittedly did not incur any out-of-pocket expenses by October 14, 2016 as required under the parties' agreements.[16]

---

[12]  *Id.* at 368 (quoting *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997)).

[13]  *Id.* (quoting *Twin City Fire Ins. Co. v. Del. Racing Ass'n*, 840 A.2d 624, 628 (Del. 2003)).

[14]  *Chi. Bridge & Iron Co. N.V. v. Westinghouse Elec. Co. LLC*, 166 A.3d 912, 913-14 (Del. 2017).

[15]  Defs.' Opening Br. Mot. for Partial J. 1.

[16]  *Id.*

The parties do not dispute the material terms of the Merger or Escrow Agreements. As I stated in my prior opinion, the Merger Agreement provides that Sparton is entitled to indemnification for claims related to fraud or "any of the matters set forth on the Specific Indemnity Schedule" ("Specific Indemnity Escrow Claims"), which includes the O'Neil Claim.[17] But Sparton's right to indemnification for Specific Indemnity Escrow Claims is limited to losses "that [were] actually incurred prior to October 14, 2016."[18] Sparton had no contractual right to indemnification for losses from Specific Indemnity Escrow Claims "that [were] pending or otherwise [had] not been resolved prior to October 14, 2016."[19] Moreover, "the obligation to indemnify Sparton for [Specific Indemnity Escrow Claims] terminate[d] on October 14, 2016 . . . regardless if any [Specific Indemnity Escrow Claims] remain pending and have not been settled or otherwise resolved.'"[20] The Merger Agreement also provides that "[t]he Specific Indemnity [Escrow] Claims are Sparton's sole and exclusive remedy for losses related to matters listed

---

[17]  *Sparton*, 2017 WL 3421076, at *4; Merger Agreement § 11.01.

[18]  Merger Agreement § 11.01(iii); Defs.' Am. Countercls. ¶ 29; Pl.'s Answer ¶ 29; *Sparton*, 2017 WL 3421076, at *9.

[19]  *Id*.

[20]  Merger Agreement § 11.04; Pl.'s Answer ¶ 29; *Sparton*, 2017 WL 3421076, at *9-10.

on the Specific Indemnity Schedule, except in the case of fraud."[21]  The Escrow Agreement provides that Sparton "may not submit a Specific Indemnity Escrow Claim until it actually incurs out-of-pocket Losses indemnifiable under Section 11.01(iii) of the Merger Agreement or there is a judgment or settlement . . . of any matter covered by Section 11.01(iii)."[22]  On October 14, 2016, the Escrow Agreement required the escrow agent to release the remaining escrow funds "less the aggregate amount, if any, of funds requested for distribution" in all pending Specific Indemnity Escrow Claims.[23]

These provisions of the Escrow and Merger Agreements are unambiguous. To withhold the escrow funds for losses arising out of any Specific Indemnity Escrow Claims, Sparton must have incurred out-of-pocket expenses related to such claim or obtained a judgment or settlement of such claim prior to October 14, 2016. Sparton does not seriously contend otherwise.  Sparton has not alleged that it incurred any such out-of-pocket expenses.  To the contrary, Sparton stated in response to Defendants' motion to dismiss that "[n]o judgment or settlement has

---

[21]    Merger Agreement § 11.02; *Sparton*, 2017 WL 3421076, at *4.

[22]    Merger Agreement, Ex. C § 4(e)(vi); *Sparton*, 2017 WL 3421076, at *4.

[23]    Merger Agreement, Ex. C § 4(d)(i).

been entered with respect to the Specific Indemnity Matters because Defendant O'Neil has refused to do so."[24] And, in my prior opinion dismissing the O'Neil Claim, I held that "[t]he conclusory allegation that O'Neil did not use commercially reasonable efforts to resolve the matters because the matters remain unresolved is not enough to state a claim under Rule 12(b)(6)."[25] Thus, because Sparton never had any contractual right to withhold the escrow funds, Defendants are entitled to release of the funds under the terms of the parties' agreements.

---

[24] Pl.'s Answering Br. Mot. to Dismiss 17-18.

[25] *Sparton*, 2017 WL 3421076, at *5. Sparton has at various times asserted two additional arguments. Sparton asserted in its answer to Defendants' counterclaims that a demand letter from the California State Board of Equalization constitutes a "settlement" under the Merger Agreement, which occurred before October 14, 2016. Pl.'s Answer ¶ 84. This argument is not credible, even taking all reasonable inferences in Sparton's favor. A "settlement" as defined in the Merger Agreement must be in writing and signed by both parties. Merger Agreement § 11.04 (a "settlement" must be "approved by [Sparton] and [Defendant O'Neil] . . . [and] agreed to in writing by all parties thereto on or prior to October 14, 2016[.]"). Sparton does not allege that this occurred. Sparton also argues that release of the funds is premature because there has not been a "Final Determination" as defined in the Escrow Agreement. Defendants do not dispute this fact. Instead, they argue that the Escrow Agreement provides for release of the funds if there is a "Final Determination" or "Joint Release Instruction." Defendants seek a mandatory injunction requiring Sparton to agree to send the escrow agent a "Joint Release Instruction."

### B.     A mandatory injunction provides the appropriate form of relief for the release counterclaim

Defendants seek a mandatory injunction ordering Sparton to instruct the escrow agent to release the escrow funds.[26] I find that a mandatory injunction is the appropriate form of relief. "To issue a mandatory injunction requiring a party to take affirmative action . . . the Court of Chancery must either hold a trial and make findings of fact, or base an injunction solely on undisputed facts."[27] In order for a movant to be entitled to a mandatory injunction, the movant must show "(1) actual success on the merits; (2) irreparable harm; and (3) the harm resulting from failure to issue an injunction outweighs the harm befalling the opposing party if the injunction is issued."[28]

---

[26]     In the alternative, Defendants seek "$838,000 in damages for Sparton's contractual breach . . . and a declaratory judgment declaring that [Defendants] are entitled to immediate release of all remaining [escrow] funds[.]" Defs.' Reply Mot. for Partial J. 20. If the Court grants either of these remedies, "to expedite payment to [Defendants of any damages awarded], [Defendants] further request[] that, pursuant to Court of Chancery Rule 54(b), the Court state that there is no just reason for delay and enter final judgment on the [Defendants' counterclaim]." *Id.* 20-21. I need not address these forms of relief because I grant Defendants a mandatory injunction.

[27]     *C&J Energy Servs., Inc. v. City of Miami Gen. Empls.' Ret. Trust*, 107 A.3d 1049, 1071 (Del. 2014).

[28]     *ID Biomed. Corp. v. TM Techs., Inc.*, 1995 WL 130743, at *15 (Del. Ch. Mar. 16, 1995) (citing *Draper Commc'ns, Inc. v. Del. Valley Broads., L.P.*, 505 A.2d 1283, 1288 (Del. Ch. 1985)).

### 1. Success on the merits

As discussed above, Defendants have proven actual success on the merits because it has shown that it is entitled to release of the escrow funds under the parties' agreements.

### 2. Irreparable harm

Section 13.17 of the Merger Agreement provides that "irreparable damage would occur in the event that any of the provisions" of the Merger Agreement "were not performed in accordance with their specific terms or were otherwise breached[.]"[29] Further, "each party shall be entitled to enforce specifically the terms and provisions of" the Merger Agreement, "and appropriate injunctive relief shall be granted in connection therewith."[30] "In Delaware, parties can agree contractually on the existence of requisite elements of a compulsory remedy, such as the existence of irreparable harm in the event of a party's breach, and, in keeping with the contractarian nature of Delaware corporate law this court has held that such a stipulation is typically sufficient to demonstrate irreparable harm."[31] Further,

---

[29]   Merger Agreement § 13.17.

[30]   *Id*.

[31]   *Martin Marietta Mat'ls, Inc. v. Vulcan Mat'ls Co.*, 56 A.3d 1072, 1145 (Del. Ch. 2012), *aff'd*, 68 A.3d 1208 (Del. 2012) ("Our courts have long held that 'contractual

Delaware courts have held that an order requiring immediate release of escrow funds is the most certain, prompt, complete, and efficient form of relief, such that any legal remedies would be inadequate.[32] The escrow funds belong to Defendants, and under the circumstances, damages would not adequately compensate Defendants for their losses.

### 3. Balance of the equities

The equities are in Defendants' favor because Sparton never had the right to withhold the escrow funds under the parties' agreements. Allowing Sparton to withhold assets that rightfully belong to Defendants will harm Defendants more than taking those assets that were not Sparton's away from Sparton.[33] Thus, I find that

---

stipulations as to irreparable harm alone suffice to establish that element for the purposes of issuing . . . injunctive relief.'").

[32] *SecNet Hldgs., LLC v. Potash*, C.A. No. 7781-VCP, at 29 (Del. Ch. Apr. 2, 2013) (TRANSCRIPT); *see also, e.g.*, *East Balt LLC v. East Balt US, LLC*, 2015 WL 3473384, at *2-4 (Del. Ch. May 28, 2015) (holding that this Court had jurisdiction over an action for "an order requiring Defendants to provide joint written instructions directing the Escrow Agent to release the remaining Escrow Amount" because money judgment alone would not be an adequate remedy); *Haney v. Blackhawk Network Hldgs., Inc.*, 2017 WL 543347, at *4 (Del. Super. Feb. 8, 2017) (holding that a claim for the release of escrow funds was equitable in nature because any damage award would require plaintiff to seek specific performance or an affirmative injunction in this Court).

[33] *FriendFinder Networks Inc. v. Penthouse Glob. Media, Inc.*, 2017 WL 2303982, at *17 (Del. Ch. May 26, 2017) (recognizing that "allowing assets that are rightfully FriendFinder's to remain in the custody and control of Penthouse will harm FriendFinder more than taking those domains that were not Penthouse's at the

Defendants are entitled to an injunction requiring the parties to enter into a "Joint Release Instruction," as defined in the Escrow Agreement, to provide for the disbursement of all of the escrow funds to Defendants.[34]

## C.      An interim attorneys' fee award is warranted

Defendants also seek to recover an interim award for attorneys' fees and expenses incurred in connection with the O'Neil Claim and fraud claim that the Court dismissed in its August 9, 2017 opinion.[35]  Delaware courts generally apply the American Rule, under which "each party is obligated to pay its own attorneys' fees regardless of the outcome."[36]  But "where the parties have determined the allocation of fees by private ordering," like in a merger agreement, "departure from this general rule and deference to their agreement are warranted.  Absent any

---

time of closing away from Penthouse"); *see also SLC Beverages, Inc. v. Burnup & Sims, Inc.*, 1987 WL 16035, at *3 (Del. Ch. Aug. 20, 1987) (finding that equities favored issuance of a mandatory injunction where "plaintiff is suffering injury by being prevented from obtaining the consideration which it bargained for"); *True North Commc'ns Inc. v. Publicis S.A.*, 711 A.2d 34 (Del. Ch. 1997) ("Publicis cannot now assert that it will be harmed due to the Court's enforcement of the rights and obligations for which it specifically bargained, and which were reduced to writing in the terms of the [parties' agreement]").

[34]     Escrow Agreement § 4(c)(i).

[35]     *Sparton*, 2017 WL 3421076.

[36]     *W. Willow–Bay Ct., LLC v. Robino–Bay Ct. Plaza, LLC*, 2009 WL 458779, at *8 (Del. Ch. Feb. 23, 2009).

qualifying language that fees are to be awarded claim-by-claim or on some other partial basis, a contractual provision entitling the prevailing party to fees will usually be applied in an all-or-nothing manner."[37]

This Court's power to award interim fees "is part of the original authority of the chancellor to do equity in a particular situation."[38] This Court "may grant interim fees for a variety of reasons, including as a consequence for discovery abuse, as a sanction for making frivolous legal arguments or engaging in bad-faith litigation tactics, as a remedy for contempt of an interlocutory court order, or under specific statutory authority."[39] "[I]nterim fee awards may be appropriate where a plaintiff has achieved the benefit sought by the claim that has been mooted or settled and that benefit is not subject to reversal or alteration as the remaining portion of the litigation proceeds."[40] "By contrast, if further litigation could alter the nature or scope of the relief obtained, or if there are reasons why benefits cannot yet be evaluated, then an

---

[37]    *Id.*

[38]    *Mills v. Elec. Auto–Lite Co.*, 396 U.S. 375, 393 (1970) (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 166 (1939)).

[39]    *In re Del Monte Foods Co. S'holders Litig.*, 2011 WL 2535256, at *6 (Del. Ch. June 27, 2011).

[40]    *La. State Empls.' Ret. Sys. v. Citrix Sys., Inc.*, 2001 WL 1131364 (Del. Ch. Sept. 17, 2001).

interim award would be premature."[41]  "Regardless of whether a party can satisfy the requirements for an interim fee award, the decision to entertain the application remains at the discretion of the trial court."[42]

Defendants seek an award of interim attorneys' fees under Section 13.09 of the Merger Agreement, which states:

> Prevailing Party.  In the event of any litigation arising from a claim for Fraud or the matters set forth on the Specific Indemnity Schedule, the prevailing party shall be entitled to recover from the non-prevailing party all reasonable costs incurred including staff time, court costs, attorneys' fees, and all other related expenses incurred in such litigation. For avoidance of doubt, the Stockholders and the Optionholders shall be third-party beneficiaries of this Section 13.09 and shall have the benefit of this Section 13.09 in connection with any Fraud claim brought against them in connection with the transactions contemplated hereby.[43]

Section 13.09 requires Sparton to pay Defendants' attorneys' fees related to their defense against the Specific Indemnity Escrow Claims and fraud claims.[44]

---

[41]     *In re Del Monte*, 2011 WL 2535256, at *7.

[42]     *Id*.

[43]     Merger Agreement § 13.09.

[44]     Sparton itself invoked this interpretation of Section 13.09 in a letter it sent to Defendants stating that Sparton is "permitted under Section 13.09" to hold Defendants "fully responsible for all attorneys' fees and expenses that Sparton

Sparton cites several cases for the proposition that interim attorneys' fees are not granted absent exigent circumstances,[45] but those cases do not discuss a contractual right to attorneys' fees akin to Section 13.09 that carves out claims that the Court has already dismissed and that are not subject to reversal or alteration by the remaining litigation. This Court dismissed Sparton's fraud claim and O'Neil Claim, which are the only claims brought by Sparton arising from "Fraud" or the "Specific Indemnity Escrow Schedule" as stated in Section 13.09. Sparton's only remaining claim is the Expenses Claim, which is unrelated to the indemnifiable matters set forth in Section 13.09. Thus, because Defendants are the "prevailing party" under Section 13.09 as to the fraud claim and O'Neil Claim, they are entitled to all reasonable attorneys' fees thereunder.

### D.     The requested fees are reasonable

Section 13.09 entitles the prevailing party to recover all "reasonable" attorneys' fees and expenses incurred.[46] This Court has discretion in determining

---

incurs in connection with pursuing" its claims arising from the Specific Indemnity Escrow Claims. Defs.' Reply Mot. for Atty's' Fees, Ex. 1.

[45]    *In re Emulex S'holder Litig.*, C.A. No. 4536-VCS (Del. Ch. Dec. 18, 2009) (ORDER); *Smollar v. Potarazu*, 2016 WL 3635304 (Del. Ch. June 29, 2016); *In re Del Monte*, 2011 WL 2535256; *La. State Empls.' Ret. Sys.*, 2001 WL 1131364; *Frazer v. Worldwide Energy Corp.*, 1991 WL 74041 (Del. Ch. May 2, 1991).

[46]    Merger Agreement § 13.09.

the reasonableness of attorneys' fees.[47] The party seeking the attorneys' fees bears the burden of establishing the reasonableness of the amount sought.[48] "Determining the reasonableness of amounts sought 'does not require that this Court examine individually each time entry and disbursement[.]'"[49] "If a party cannot be certain that it will be able to shift expenses at the time the expenses are incurred, the prospect that the party will bear its own expenses provides 'sufficient incentive to monitor its counsel's work and ensure that counsel [does] not engage in excessive or unnecessary efforts.'"[50]

Defendants seek $447,565.03 in attorneys' fees and expenses.[51] Sparton challenges the reasonableness of Defendants' fee request. First, Sparton argues that Defendants' requested fees are unreasonable because "the only activity in this litigation" related to "one substantive motion[.]"[52] This argument ignores the

---

[47]  *Mahani v. Edix Media Gp., Inc.*, 935 A.2d 242, 245 (Del. 2007).

[48]  *Glob. Link Logistics, Inc. v. Olympus Growth Fund III, L.P.*, 2010 WL 692752, at *1 (Del. Ch. Feb. 24, 2010) (quoting *Korn v. New Castle Cty.*, 2007 WL 2981939, at *2 (Del. Ch. Oct. 3, 2007)).

[49]  *Danenberg v. Fitracks, Inc.*, 58 A.3d 991, 997 (Del. Ch. 2012) (citing *Aveta Inc. v. Bengoa*, 2010 WL 3221823, at *6 (Del. Ch. Aug. 13, 2010)).

[50]  *Id.* (citing *Aveta*, 2010 WL 3221823, at *6).

[51]  Defs. Mot. for Atty's' Fees 7.

[52]  Pl.'s Answering Br. Mot. for Atty's' Fees 8.

activity in this matter. Sparton "twice [] asserted multiple claims in lengthy complaints against 26 individual defendants, asserted a fraudulent breach claim that was barred by the merger agreement, and insufficiently pled fraud claims" and put Defendants "in a position of having to move to dismiss, to prepare opening briefs in support of two motions to dismiss, to complete briefing, and then to appear and present that motion before this Court."[53] Sparton's own conduct thus required Defendants' counsel to defend multiple claims in enforcing its rights under the parties' agreements.[54]

Sparton next argues that Defendants only obtained a $838,000 benefit for the O'Neil Claim; therefore, the fee request is unreasonable.[55] But this argument ignores the fact that Defendants also prevailed on Sparton's fraud claim and Working Capital Claim. "In total, Sparton valued the [claims dismissed by the Court] at over $2.6

---

[53] Oral Arg. at 46-47.

[54] *Auriga Capital Corp. v. Gatz Props.*, LLC, 40 A.3d 839, 882 (Del. Ch. 2012) ("In objecting to the fee, [the objecting party] and [its] counsel should remember that it is more time-consuming to clean up the pizza thrown at a wall than it is to throw it.").

[55] Pl.'s Answering Br. Mot. for Atty's' Fees 8.

million."[56]  Moreover, Defendants incurred their fees before knowing the outcome

of the litigation.[57]

Next, Sparton argues that Defendants unreasonably hired three law firms to

defend Sparton's claims.  But each of Defendants' counsel performed important and

distinct functions in defending against Sparton's claims.[58]  Further, the hourly rates

---

[56]   Defs.' Reply Mot. for Atty's' Fees 6.

[57]   *Aveta*, 2010 WL 3221823, at *6 (paying attorneys' fees before prevailing on a claim is a "further indication of reasonableness").

[58]   Defendants hired deal counsel, lead litigation counsel, and Delaware counsel.

> Relying on counsel from the jurisdiction where a proceeding takes place does not suggest duplicative or excessive charges; it rather suggests the efficient and prudent allocation of resources. Because of their focus on our State's law, Delaware lawyers frequently can answer in a telephone call questions about this jurisdiction that a forwarding law firm would spend hours or days researching. Delaware counsel can readily point to leading authorities, provide precedent filings, and help forwarding counsel prepare the case (including developing the discovery record) so that the matter can be presented most effectively. Delaware counsel must be involved sufficiently to fulfill their obligations to this Court.

> *Id*. at *7.  In addition, Defendants substantially reduced the cost of defending Sparton's claims by transitioning the matter to Butler Rubin Saltarelli & Boyd, LLP, whose effective billing rate was less than half that of Defendants' deal counsel, Kirkland & Ellis LLP.  Defs.' Reply Mot. for Atty's' Fees 7-8.

charged by Defendants' counsel are not excessive, and the staffing of attorneys appears appropriate.[59]

Sparton also argues that "[t]he time records attached to [Defendants' motion for interim attorneys' fees] are so heavily redacted [that] neither Sparton nor the Court can make any assessment of whether the fees are related to the litigation or whether they are reasonable."[60]  But Defendants' invoices only redact (1) limited privileged information or (2) time spent on matters unrelated to the dismissed claims for which Defendants do not seek attorneys' fees.[61]  Finally, Sparton argues that Defendants cannot recover fees incurred during the four months before Sparton filed the Complaint because such fees were not incurred "in this litigation" as required by Section 13.09 of the Merger Agreement.[62]  But Defendants incurred these fees *after* Sparton declared its intent to "pursue all available remedies[,]"[63] and the work

---

[59]   *Arbitrium (Cayman Islands) Handels AG v. Johnston*, 1998 WL 155550, at *4 (Del. Ch. March 30, 1998) (noting in ruling on fee application that "[f]or a Court to second-guess, on a hindsight basis, and attorney's judgment . . . is hazardous and should whenever possible be avoided.").

[60]   Pl.'s Answering Br. Mot. for Atty's' Fees 1.

[61]   Defs.' Reply Mot. for Atty's' Fees 7, n.4.

[62]   Pl.'s Answering Br. Mot. for Atty's' Fees; Merger Agreement § 13.09.

[63]   *Id*. Ex. 1 ("If you do not coordinate and remit payment of $995,803 within 30 days of this letter, Sparton will have no choice but to pursue all available remedies.").

performed "developed and framed the issues which were eventually litigated."[64]

Absent a clear restriction to the contrary, a fee-shifting provision encompasses fees incurred in anticipation of litigation.[65] There is no such restriction in Section 13.09.

The fees requested by Defendants were "actually paid or incurred" in the "good faith professional judgment of competent counsel[,] and were charge[d] . . . at rates, or on a basis, charged to other for the same or comparable services under comparable circumstances."[66] Thus, the fees are recoverable under Section 13.09.

---

[64] *ReCor Med., Inc. v. Warnking*, 2014 WL 5317768, at *1 (Del. Ch. Oct. 15, 2014) (finding that plaintiffs were entitled to attorneys' fees incurred before commencing litigation that "attempted to resolve its dispute with Defendants through negotiation" under a fee-shifting provision that did not limit recovery to fees incurred during litigation).

[65] *Id.*

[66] *White v. Curo Texas Hldgs., LLC*, 2017 WL 1369332, at *5 (Del. Ch. Feb. 21, 2017).

## III.    CONCLUSION

For the reasons discussed above, I grant Defendants' motion for partial judgment and motion for interim attorneys' fees.

**IT IS SO ORDERED.**

Sincerely,

*/s/Tamika Montgomery-Reeves*

Vice Chancellor

TMR/jp